IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

O.O.,
by his parent and next friend,
Claudia Pabo,
3512 Rodman Street, NW,
Washington, D.C. 20008,

and

CLAUDIA PABO,
3512 Rodman Street, NW,
Washington, D.C. 20008,

   Plaintiffs,

   v.              **Civil Action No. 07-cv-1863**

DISTRICT OF COLUMBIA,
A Municipal Corporation,
One Judiciary Square,
441 Fourth Street, NW,
Washington, D.C. 20001,

and

ADRIAN M. FENTY, (officially as)
Mayor of the District of Columbia,
John A. Wilson Building,
1350 Pennsylvania Avenue, NW,
Washington, DC 20004,

and

MICHELLE A. RHEE, (officially as)
Chancellor,
District of Columbia Public Schools,
825 North Capitol Street, NE,
Washington, D.C. 20002,

   Defendants.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**[1]

**Preliminary Statement**

1.      This is an action for the long overdue placement and funding of O.O. at Kingsbury Day School ("Kingsbury"), effective as of the commencement of the 2006-07 school year, after the District of Columbia Public Schools ("DCPS") failed to provide him with a free appropriate public education ("FAPE") as required under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400-1487, and an Independent Hearing Officer of the District of Columbia Public Schools Student Hearing Office exacerbated that failure by issuing a badly-flawed and incorrect Due Process Decision months after the conclusion of the hearing before him.  In short, this is a total breakdown of the IDEA in the District of Columbia.  This is an amended complaint being submitted with the written permission of opposing counsel.

**Jurisdiction**

2.      This Court has jurisdiction over this matter pursuant to the IDEA;  42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  Plaintiffs have effectively exhausted their administrative remedies and appeal to this Court following the failure of an Independent Hearing Officer of the District of Columbia Public Schools Student Hearing Office to issue any decision in their case.

**Parties**

---

[1]     Counsel for the defendants gave written consent for plaintiffs to file this amended complaint on November 16, 2007.

3. O.O. is a disabled child, as defined by the IDEA, eligible to receive special education and related services. At all times relevant to this action, he and his mother, Claudia Pabo, resided in the District of Columbia. Ms. Pabo brings this action on O.O.'s behalf and in her own right.

4. The District of Columbia is a municipal corporation that receives federal financial assistance and is required to comply with the IDEA.

5. Adrian M. Fenty is the Mayor of the District of Columbia. As of June 12, 2007, he has authority over DCPS pursuant to the Public Education Reform Amendment Act of 2007, Law 17-9, Act 17-38. As such, he has authority over all operations and functions of DCPS, which includes ensuring that DCPS complies with District and federal law as to the education of disabled children, that all disabled children in the District of Columbia receive a FAPE, and that their rights to equal protection and due process of law are respected. He is sued in his official capacity.

6. Michelle A. Rhee is the Chancellor of DCPS. She serves at the pleasure of the Mayor and is the public official charged with the responsibility for ensuring that DCPS complies with District and federal law as to the education of disabled children. She also ensures that all disabled children in the District of Columbia receive a FAPE and that their rights to equal protection and due process of law are respected. She is sued in her official capacity.

## Factual Allegations

7. O.O. is a fourteen-year-old student eligible to receive special education services under the IDEA as a student with Multiple Disabilities. O.O. has a specific learning disability, language disorder, problems with reading social cues and peer relationships, and behaviors

associated with Attention Deficit Hyperactivity Disorder ("ADHD") including some oppositionality, impulsivity, variable attention, hyperactivity, and poor executive functioning. O.O. is also identified as having Fetal Alcohol Syndrome. His disabilities are significant and require that he receive intensive educational support to access education.

8. During the 2005-06 school year, O.O. attended fifth grade at Our Lady of Victory School. This was O.O.'s second time in the fifth grade. Prior to attending Our Lady of Victory, O.O. attended fourth and fifth grade at John Eaton Elementary School, a District of Columbia Public School. Before attending John Eaton, O.O. attended Hearst Elementary School, also in DCPS, for pre-kindergarten through third grade. He entered pre-kindergarten at the age when he should have entered kindergarten. Thus, O.O. is currently two years behind his peers in school.

9. O.O. experienced great difficulty with his schoolwork during the 2005-06 school year, as he had in previous years. His mother spent several hours a night with him trying to complete his assignments. She became very concerned about O.O.'s academic difficulties; both she and staff members at Our Lady of Victory felt that he might need special education in order to be successful.

10. In the Spring of 2006, Ms. Pabo contacted DCPS and requested that the school system determine O.O.'s eligibility for special education.

11. In April of 2006, a multi-disciplinary team ("MDT") met and determined that evaluations and observations were necessary in order to respond to Ms. Pabo's request. DCPS completed the evaluations and observations during the Spring and Summer of 2006.

12. The DCPS MDT was set to convene on August 10, 2006 to review the evaluations and determine eligibility. Ms. Pabo was out of town on that date and on August 9, 2006, Dr.

Laura Solomon, O.O.'s education advocate, called the DCPS Central Assessment Referral and Evaluation ("C.A.R.E.") Center and postponed the meeting.

13. Despite the parent's unavailability and request that the meeting not go forward, on August 10, 2006, the MDT convened to review all evaluations and observations, and to determine O.O.'s eligibility. The team found O.O. eligible for special education services and proposed the required Individualized Education Program ("IEP") with goals and objectives. The IEP team did not propose placement, but recommended a setting "out of general education".

14. On August 15, 2006, the parent, through counsel, wrote to DCPS and advised that while they were willing to consider any DCPS proposed placement, absent an appropriate public placement they would be enrolling O.O. at Kingsbury at the start of the 2006-07 school year.

15. The team reconvened on August 30, 2006, to review more evaluations, including the report by Dr. Solomon. At the meeting, the team reviewed the proposed goals and objectives and Dr. Solomon shared many concerns about the goals and objectives with the DCPS IEP team. The team refused to modify any of the goals and/or objectives, but did not explain why.

16. At the conclusion of the meeting, the team determined that O.O. requires full-time special education and proposed the Prospect Learning Center. The notes of the meeting reflect this proposal. Despite her concerns about Prospect for O.O., Ms. Pabo agreed to observe the program. The notes of the meeting reflect that Ms. Pabo continued to request that DCPS place and fund O.O. at Kingsbury.

17. Despite its agreement that O.O. requires full-time special education, the DCPS IEP called for 27.5 hours of special education per week, leaving 2.5 hours per week to be provided in the mainstream environment. Prospect Learning Center is a special education facility

where mainstreaming is not possible. The team thus proposed a placement where its own proposed IEP could not be implemented.

18. After DCPS made its placement proposal, the meeting ended. At no time did DCPS suggest that it was deferring the placement or that it would hold another meeting regarding placement. Furthermore, there was no indication that the proposed placement was not a final decision.

19. Dr. Solomon and Ms. Pabo observed Prospect and found it plainly inappropriate for O.O. Among other reasons, Ms. Pabo and Dr. Solomon found that Prospect could not offer the flexible curriculum that O.O. needs to succeed, that the class sizes were too large, and that O.O. only would have been able to attend Prospect for one year before aging out.

20. Dr. Solomon and Ms. Pabo were also informed by the director of Prospect that no space existed for O.O. in an appropriate classroom, and that she did not know when a space would open up.

21. During the entire 2006-07 school year, an available space for O.O. at Prospect never came into existence.

22. Accordingly, Ms. Pabo placed O.O. at Kingsbury Day School, a private special education day school in the District of Columbia, for the 2006-07 school year. Kingsbury was, and continues to be, an appropriate placement for O.O.

23. On September 8, 2007, DCPS sent a letter of invitation to the parent for a placement meeting at the C.A.R.E. Center. The letter stated that, "on August 30, 2007, DCPS proposed Prospect Learning Center as an appropriate placement for your child. Subsequently, DCPS is proposing the following dates/times for a placement meeting at the C.A.R.E. Center."

The parent and her counsel were confused by this letter and therefore sought clarification about the meeting through a letter. Later that day, DCPS responded and stated that because the parent had neither accepted nor rejected Prospect, the meeting was being convened in order for the parent to share her thoughts about Prospect. The letter further indicated that failure to confirm a date or time would result in DCPS proceeding with the placement meeting on September 21, 2007.

24. Under the IDEA, when a parent disagrees with any decision of an IEP team, the parent has the right to file a due process complaint notice, appealing the decision of the IEP team and requesting a due process hearing. Because Ms. Pabo did not agree with the proposed placement of the IEP team, on September 14, 2006, she filed a due process hearing request, appealing the decision of the August 30, 2007 IEP team.

25. On September 18, 2007, the parent, through counsel, notified DCPS that she had filed a due process complaint notice and confirmed that she thereby rejected the placement at Prospect Learning Center. She further indicated that the meeting on September 21, 2007 was not necessary and should not go forward.

26. On September 21, 2007, despite the parent's previous communication that the meeting should not occur and that she was rejecting the placement, DCPS held an IEP/Placement meeting at the C.A.R.E. Center without the parent present, in violation of the IDEA.

27. In response to the hearing request, the IDEA required DCPS to convene a timely resolution session that included (1) knowledgeable MDT/IEP team members, and (2) at least one DCPS representative with decision-making authority. 20 U.S.C. § 1415(f)(1)(B).

28. On September, 26, 2006, DCPS convened a resolution session run by Kymberly Grafton, a DCPS representative with no decision-making authority, and who had no knowledge of O.O. At the meeting, Ms. Grafton informed Ms. Pabo that she had no authority to state anything except the DCPS pre-existing position – that Prospect was an appropriate placement for O.O.

29. In overt violation of the IDEA and holdings of this Court, DCPS failed to have a representative from Prospect present at the meeting or anyone with decision-making authority. The parties were unable to resolve the issues in the complaint.

30. On January 16 and March 14, 2007, a due process hearing was held before Hearing Officer Terry Michael Banks. At the hearing, plaintiffs confirmed without challenge that, in addition to their substantive concerns regarding the appropriateness of Prospect, there was actually no room for O.O. at Prospect and so DCPS had failed to offer any placement. Dr. Eve Peterson, who runs Prospect, testified that there was no room for O.O. at Prospect and that she did not know when, how, and by whom any new class for him could have been set up and run.

31. Because of the two-month gap between hearing dates, Hearing Officer Banks ended the hearing without oral closing arguments so that counsel would have time to receive and review transcripts from the hearing dates and submit written closing arguments.

32. DCPS failed to provide adequate transcripts to allow counsel to complete closing arguments. The first transcript of the first day of hearing was so rife with errors that both parties agreed to have it replaced. The second transcripts, containing both days of the hearing, were not received by counsel until June 7, 2007. While better, these transcripts still

contained a multitude of errors, including misidentification of witnesses and the lack of a certification by a court reporter.

33. Despite these errors, plaintiffs submitted their closing argument to the Hearing Officer on August 2, 2007, and DCPS submitted its closing argument on August 6, 2007. Counsel for plaintiffs submitted a reply to the DCPS closing argument on August 9, 2007.

34. Despite having received all evidence and heard all testimony as of March 14, 2007, and despite having received transcripts as of June 7, 2007, and despite having received all closing arguments as of August 9, 2007, Hearing Officer Banks did not issue his decision until November 5, 2007 – long after all applicable time lines had expired.

35. The Code of Federal Regulations requires that, if a hearing request is not resolved through the resolution meeting within thirty days, then a hearing must be held and the Hearing Officer must issue a decision within 45 days after the expiration of that 30-day resolution period, or in other words, that a decision must be reached within seventy-five days of the complaint. 34 C.F.R. § 300.515(a). In § 1003 of its Standard Operating Procedures Manual, the DCPS Special Education Hearing Office echoes the federal regulations by stating that, "the final decision must be signed, dated, and issued within 10 days following the hearing and no more than seventy-five (75) days following the request for hearing." The decision was issued three months after the hearing ended and over a year after the request for the hearing was filed.

36. On November 5, 2007, after the initial complaint was filed in this matter, Hearing Officer Banks issued his decision finding in favor of the school system. The decision contains palpable errors of fact and law.

37. The Hearing Officer ignored the evidence and testimony that on August 30, 2007, DCPS proposed placement for O.O. at Prospect Learning Center without having any space for him there and that space never opened up at Prospect.

38. The Hearing Officer ignored the evidence and testimony that at the IEP meeting on August 30, 2007, the parent shared concerns about the proposed program and placement at Prospect Learning Center, and requested private school placement.

39. The Hearing Officer ignored the evidence and testimony that through a letter prior to the August 30, 2007, IEP meeting and at the IEP meeting, the parent informed DCPS of her intent to enroll O.O. at Kingsbury Day School and requested funding for the placement.

40. The Hearing Officer ignored the testimony of the parent's expert witnesses.

41. Without cause or valid explanation, the Hearing Officer improperly disregarded the overwhelming testimony of the parent's expert regarding the inappropriateness of the proposed placement.

42. The Hearing Officer erred by holding that the parent failed to meet her burden of proving that DCPS failed to provide an appropriate program and placement.

43. The Hearing Officer erred by finding that counsel for O.O. intentionally obstructed DCPS' ability to complete the placement determination.

44. The Hearing Officer erred in finding that at the August 30, 2007 IEP meeting, DCPS deferred its placement decision.

45. The Hearing Officer erred in finding that O.O. did not suffer any educational harm as a result of his delay in issuing his hearing decision.

46. The Hearing Officer misinterpreted and misapplied federal and D.C. statutory and case law in his decision.

47. Plaintiffs are aggrieved by the decision of the Hearing Officer.

48. Plaintiffs have exhausted their administrative remedies.

## COUNT I

(Failure to Issue a Timely Decision)

49. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 48 above.

50. Federal and D.C. law require that a Hearing Officer issue a timely decision following a due process hearing so that the plaintiffs' complaints can be resolved.

51. The Hearing Officer committed error, and violated plaintiffs' due process rights under the IDEA and D.C. law, by failing to issue a timely decision in a timely manner.

## COUNT II

(Failure to Provide a FAPE)

52. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 48 above.

53. Federal and D.C. law require that a school system provide a student with a free and appropriate public education ("FAPE"), and that a system that fails to provide a student with a FAPE must place and fund that student in a private placement that can provide that student with educational benefit.

54. DCPS failed to offer O.O. a FAPE when it offered him a placement knowing that there was no space for him, and that even if there was space that it would not have been

appropriate. In violation of federal and D.C. law, DCPS currently does not have a placement for O.O..

55. Kingsbury has been and continues to be an appropriate placement for O.O. where he is receiving significant educational benefit.

56. The Hearing Officer committed error, and violated plaintiffs' rights under the IDEA and D.C. law, by failing to order DCPS to place and fund O.O. at Kingsbury effective as of the commencement of the 2006-07 school year.

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue declaratory relief that Claudia Pabo is entitled to reimbursement from DCPS for O.O.'s education at Kingsbury from the beginning of the 2006-07 school year through the present day;

2. Order the defendants to place and fund O.O. at Kingsbury;

3. Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

4. Award any other relief that this Court deems just.

Respectfully submitted,

_____
Michael J. Eig            #912733
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDIA PABO,<br>parent and next friend of O.O.,<br><br>　　　　Plaintiff,<br><br>　　　　　v.<br><br>THE DISTRICT OF COLUMBIA<br><br>　　　　Defendants. | Civil Action No. 07-cv-1863 |

NOTICE OF CONSENT

　　Pursuant to Rule 15 of the Federal Rules of Civil Procedure, defendants gave written consent to the filing of an amended complaint in this matter on November 16, 2007. Accordingly, plaintiffs now file their amended complaint with the Court.  Thank you.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　 　/s/ (filed electronically)
　　　　　　　　　　　　　　　　　　Michael J. Eig　　　　#912733
　　　　　　　　　　　　　　　　　　MICHAEL J. EIG AND ASSOCIATES, P.C.
　　　　　　　　　　　　　　　　　　5454 Wisconsin Avenue, Suite 760
　　　　　　　　　　　　　　　　　　Chevy Chase, Maryland 20815
　　　　　　　　　　　　　　　　　　(301) 657-1740

　　　　　　　　　　　　　　　　　　Counsel for Plaintiffs