## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

O.O., by his parent and next friend,
CLAUDIA PABO,

        Plaintiffs,

        v.

DISTRICT OF COLUMBIA, *et. al.*,

        Defendants.

Civil Action No. 07-1863 (JDB)

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs respectfully request that this Court enter summary judgment in their favor. The grounds for this motion appear in the accompanying memorandum of points and authorities.

WHEREFORE, plaintiffs respectfully request that this motion be granted.

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig        #912733
Paula A. Rosenstock    #494580
Patricia F. Cyr       #490755

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for O.O. and Claudia Pabo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

O.O., by his parent and next friend,
CLAUDIA PABO,

        Plaintiffs,

        v.

DISTRICT OF COLUMBIA, *et. al.*,

        Defendants.

Civil Action No. 07-1863 (JDB)

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION.

      O.O. is a fourteen-year-old child with multiple disabilities who is entitled, under the

Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§1400, *et seq.*,

to receive special education and related services from defendants, District of Columbia Public

Schools ("DCPS").  O.O. and his mother, Claudia Pabo, brought this action in response to the

defendants' failure to provide O.O. with the free appropriate public education ("FAPE") and due

process of law to which he is entitled under the IDEA.

      Through an administrative appeal, O.O. and his mother sought a non-public placement at

Kingsbury Day School ("Kingsbury"), where O.O. could receive all of his required special

education services in a setting appropriate to meet his needs.  This action is an appeal of the

decision of an Impartial Hearing Officer,[1] who denied that relief both belatedly and without

---

[1]     Impartial Hearing Officer Terry Michael Banks decided the administrative case, in *O.O. v. District of Columbia Public Schools*, (November 5, 2007).  Citations to that determination appear as "Hearing Officer's Decision at __" or, as it relates to the findings of fact, "Hearing Officer's Decision ¶ __"

cause. The Hearing Officer issued a remarkably late decision in violation of federal law and the District's own procedures,[2] and unaccountably ignored the overwhelming and one-sided evidence as well as the weight of the law, thereby denying this family its requested relief.

In so holding, the Hearing Officer ignored both substantive and procedural rights ensured by the IDEA, committing a myriad of critical errors including: (1) dismissing and excusing his own late decision-making; (2) holding the parent and parent's counsel responsible for DCPS' own failure to ever offer an appropriate placement; and (3) somehow concluding that so long as O.O. is getting an appropriate education, it does not matter that he is not getting a *free* and appropriate education, in direct contravention of the very purpose of the IDEA. The Hearing Officer's decision is on its face and by its own terms a denial of a free and appropriate education to O.O.

As there are no material facts in dispute and plaintiffs are entitled to judgment as a matter of law, we respectfully request that this Court enter summary judgment in our favor, and provide O.O. and Ms. Pabo with the much-delayed relief to which they are entitled – funding for O.O.'s placement at Kingsbury from the start of the 2006-07 school year through the present day.

## II.    FACTUAL BACKGROUND.

### A.    O.O.'s Education Prior to the 2005-06 School Year.

O.O. was born in Russia and spent the first five years of his life in two different Russian orphanages, the second of which was an orphanage specifically for children with disabilities.

---

[2]    The Code of Federal Regulations requires that a decision be reached within seventy-five days of the complaint. 34 C.F.R. § 300.515(a). DCPS' Standard Operating Procedures Manual states in § 1003 that the final decision must be issued 10 days after the hearing. This decision was issued *three months after the hearing ended and over a year after the complaint was filed.*

Administrative Record at 707[3], 503;[4] Ms. Pabo adopted O.O. and brought him to the District of Columbia as he turned five. Admin. Rec. at 503. She enrolled him in the District of Columbia Public Schools at Hearst Elementary School. Although five-year-olds normally start school in kindergarten, O.O. was not ready for kindergarten and so began pre-kindergarten at Hearst, leaving him one year behind his peers. Admin. Rec. at 504. O.O. remained at Hearst until third grade. Admin. Rec. at 504; Complaint ¶ 8. DCPS never evaluated him for special education and he did not receive any special education services at that time, although he did receive English as a Second Language ("ESL") services. Admin. Rec. at 505-07.

O.O. moved to John Eaton Elementary, also a DCPS school, for fourth and fifth grades. Admin. Rec. at 505. He did not receive any special education services at John Eaton, although he continued to receive ESL services. Admin. Rec. at 507.

**B.     O.O.'s 2005-06 School Year at Our Lady of Victory.**

Because of concerns about her son's progress, Ms. Pabo decided to remove O.O. from John Eaton and enroll him at Our Lady of Victory ("OLV"), a private school, for the 2005-06 school year. Admin. Rec. at 507-08. Although he had already completed fifth grade at John Eaton, O.O. was not ready to begin sixth grade at OLV. He was placed in fifth grade again, leaving him two years behind his peers. Admin. Rec. at 504; Complaint ¶ 8.

---

[3]     These are citations to the Administrative Record which was submitted to the Court on January 11, 2008. Citations to the Administrative Record will appear as Admin. Rec. at __.

[4]      This citation is to the transcript contained within the administrative record. The *corrected* transcript states that O.O. was born in "Reckta" and identifies his mother as Ms. "Pavo." This transcript, though admittedly better than the first copy which was unusable by either party, is still filled with errors.

Despite repeating a grade he had just completed, O.O. experienced great academic difficulty at OLV.  Ms. Pabo spent three to five hours per night helping him with his schoolwork. Admin. Rec. at 509; Complaint ¶ 9.  At the end of the year, on May 3, 2006, Dr. Ronald S. Federici completed a neuropsychological evaluation of O.O.  Dr. Federici's report noted an impressive roster of disabilities, including cognitive and language disorders, dyslexia, Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder.  Dr. Federici also noted that O.O.'s learning disabilities are related to the fact that he suffers from Fetal Alcohol Syndrome.  Hearing Officer's Decision ¶ 3; Admin. Rec. at 849-75.  After reviewing the report, Ms. Pabo and the principal of OLV decided that it was not in O.O.'s best interests for him to return the following year.

### C.    Ms. Pabo's Search for an Appropriate Placement During Summer 2006.

In the spring of 2006, Ms. Pabo contacted DCPS to determine O.O.'s eligibility for special education and find an appropriate placement.  Admin. Rec. at 514; Complaint ¶ 10.  On April 26, 2006, a DCPS multidisciplinary team ("MDT") meeting was held.  The team found it necessary to conduct evaluations and observations of O.O. before discussing a placement and services.  Admin. Rec. at 517; Complaint ¶ 11.  DCPS subsequently completed classroom observations and evaluations throughout the spring and summer of 2006.  Admin. Rec. at 517; Complaint at ¶ 11.

After initiating this process with DCPS, Ms. Pabo also began exploring private school options for her son.  She applied to Kingsbury Day School ("Kingsbury"), a private special education day school, in July of 2006.  O.O. visited Kingsbury for two days during the summer. Admin. Rec. at 518.  Ms. Pabo also retained the services of an educational advocate, Dr. Laura

Solomon, who completed additional evaluations during August of 2006.  Admin. Rec. at 365; Hearing Officer's Decision ¶ 5.  In stark contrast to DCPS's previous failure to offer O.O. any special education services, Dr. Solomon determined that he needed an intensive, full-time special education program for the 2006-07 school year.  Hearing Officer's Decision ¶ 5; Admin. Rec. at 799-819.

On August 10, 2006, an MDT meeting was held without Ms. Pabo.  In fact, Ms. Pabo had advised DCPS that she would not be available on that date, but DCPS ignored her request to reschedule and had the meeting without her.  Complaint ¶ 13.  The team found O.O. eligible for special education but did not complete the required Individualized Education Program ("IEP") or propose a placement.  Complaint ¶ 13.

On August 30, 2006, another MDT meeting was held, this time with Ms. Pabo and Dr. Solomon in attendance.  Complaint ¶ 15; Admin. Rec. at 519.  The MDT classified O.O. as a student with multiple disabilities and determined that he needed a full-time special education program.  Complaint at ¶ 16; Hearing Officer's Decision ¶¶ 6-7.  Ms. Pabo requested that DCPS place O.O. in the full-time special education program at Kingsbury.  Admin. Rec. at 672.  DCPS, in turn, proposed its own Prospect Learning Center. Complaint ¶ 16; Admin. Rec. at 393, 525, 672.  Dr. Solomon and Ms. Pabo formally rejected the proposed placement at Prospect, but did agree to go observe the program.  Admin. Rec. at 393.  After proposing Prospect, DCPS did not propose any other placements.  Ms. Pabo and Dr. Solomon arranged to visit Prospect on September 7, 2006.  Admin. Rec. at 526.  Because she had already visited Kingsbury and determined it to be appropriate, and had not yet had a chance to visit Prospect, Ms. Pabo enrolled

O.O. in Kingsbury at her own expense prior to the start of the 2006-07 school year.  Complaint ¶ 22; Hearing Officer's Decision ¶ 12.

### D.        The Placement Process During the 2006-07 School Year.

On September 7, 2006, Dr. Solomon and Ms. Pabo visited Prospect and met with its director, Dr. Eve Peterson.  Neither Ms. Pabo nor Dr. Solomon found the program at Prospect to be appropriate for O.O.  Complaint ¶ 6.  First and conclusively, there simply was not any space.  The classes for children of O.O.'s age group were at capacity (as indeed they would be for the entire school year).  Admin. Rec. at 412.  Dr. Peterson clearly stated that the classes for thirteen-year-olds were all full.  Admin. Rec. at 236, 528.  Secondly, even if there had been space for him, O.O. would age out of the program in less than a year, which concerned Dr. Solomon and Ms. Pabo because O.O. had already been through three different schools.  Admin. Rec. at 408; Hearing Officer's Decision at ¶ 8.  They also felt that the class sizes were too large and the curriculum, which was founded in standard school system courses of study, was not appropriate.  Admin. Rec. at 408; Complaint ¶ 19.  To ensure she was fully informed, Ms. Pabo returned to Prospect for one more visit in December, 2006.  The school still did not have an opening for O.O., and Ms. Pabo still felt that the curriculum and class size continued to be inappropriate for O.O.'s identified needs.  Admin. Rec. at 529.

On September 8, 2006, DCPS invited Ms. Pabo to a "placement" meeting to again discuss Prospect.  Complaint  ¶ 23; Hearing Officer's Decision ¶ 11.  However, because she had already rejected the proposal at the previous meeting on August 30th, had in fact filed her Due Process Appeal of that proposal, and had subsequently visited without a change of mind, Ms. Pabo notified DCPS that she would not be attending the meeting and had rejected the placement.

Hearing Officer's Decision ¶ 14; Admin. Rec. 787-90.  On September 21, 2006, DCPS

needlessly held the meeting anyway, without Ms. Pabo.  Complaint ¶ 26.

###    E.    The Due Process Hearing.

As previously noted, on September 14, 2006, Ms. Pabo filed a due process complaint

notice, appealing the decision of the August 30, 2006 meeting to place O.O. at Prospect and

requesting placement at Kingsbury.  Hearing Officer's Decision ¶ 13; Admin. Rec. at 782-86.

The IDEA required DCPS to convene a timely resolution session in response to this request.

That resolution session had to include knowledgeable MDT/IEP team members and at least one

school representative with decision-making authority.  20 U.S.C. § 1415(f)(1)(B).  DCPS did

convene a resolution session on September 26, 2006, but only sent one person to the meeting;

that person had neither decision-making authority nor any knowledge of O.O.  No members of

the MDT attended.  Complaint ¶ 28; Admin. Rec. at 604.  At the due process hearing several

months later, the Hearing Officer agreed that the dispute resolution session did not meet the

statutory requirements.  Admin. Rec. at 347.  Not surprisingly, nothing was resolved at this

meeting.  Complaint ¶ 8.

On January 16, 2007, the due process hearing began before Hearing Officer Terry

Michael Banks.  Dr. Laura Solomon, who qualified as an expert in special education, testified as

to O.O.'s severe attentional issues and cognitive deficits.  Admin. Rec. at 377-79.  She further

testified that O.O. needs a full-time special education placement[5] in order to access education.

Admin. Rec. at 387.  Finally, Dr. Solomon stated that in her expert opinion, O.O. would not be

---

[5]    The transcript refers to a "full-time special education *assessment*," not placement. It is
clear that this is yet another transcript error because there are no full-time assessments, only
placements.

expected to make meaningful academic progress at Prospect.  Admin. Rec. at 412.  Notably, this expert testimony went unrebutted.  Dr. Solomon was *the only witness from either side accepted as an expert by Hearing Officer Banks*.  Admin. Rec. at 368.

Following Dr. Solomon's testimony, Ms. Marlene Gustafson,[6] the Director of Kingsbury Day School, testified that O.O. was appropriately placed at Kingsbury and is benefitting from the program there.  Admin. Rec. at 471-72.  She also testified that O.O. would be able to continue at Kingsbury through twelfth grade without changing schools.  Admin. Rec. at 477.  Ms. Gustafson explained that at Kingsbury, O.O. is in a class of only ten students with both a lead and an assistant special education teacher.  Admin. Rec. at 147-48.  Ms. Pabo then testified as to O.O.'s history and his success at Kingsbury in contrast to his prior public and parochial school experiences.  Admin. Rec. at 534-35.  Ms. Pabo also explained why she found Prospect to be inappropriate and why she found the classes there to be too large and noisy for O.O. to succeed. Admin. Rec. at 527-30.

The hearing could not be concluded on January 16th and was not reconvened until March 14, 2007.  Hearing Officer's Decision at 12.  On the second hearing date, Dr. Denise White-Jennings testified as a psychologist on behalf of DCPS and acknowledged that O.O. suffers from severe ADHD.  Admin. Rec. at 132.  Cindy Brown, a social worker with DCPS, testified as to O.O.'s need for small-group instruction and a structured classroom setting.  Admin. Rec. at 163-64.  Ms. Brown, a member of the MDT committee, further testified that she knew, based on a letter written by Ms. Pabo's counsel in late September, that Ms. Pabo understood Prospect to be the proposed placement and that she rejected it.  DCPS never responded to this letter or

---

[6]    Ms. Gustafson is identified in the transcript as "Ms. Gusteson."

otherwise indicated that it felt Ms. Pabo's understanding was incorrect.  Admin. Rec. at 183-84.
Ms. Brown further confirmed the deficiencies in the IEP meetings, such as the lack of a general
educator.  Admin. Rec. at 184.

Jermaine Perkins, a psychologist for DCPS, testified as to the IEP meetings that were
held for O.O.  However, the Hearing Officer himself noted that Mr. Perkins was not prepared to
testify, knew very little about the case, and was not an expert.  Admin. Rec. at 217-18.  Finally,
Dr. Eve Peterson, the Director of Prospect, testified by telephone.  She explained that, upon
reviewing O.O.'s IEP as drafted by DCPS, she first concluded that Prospect would not be able to
meet his needs.  Admin. Rec. at 231.  She further testified that Prospect is not a therapeutic
learning environment, as is required by the proposed DCPS IEP.  Admin. Rec. at 234.[7]  Finally,
she also admitted that, when she received O.O.'s referral, she knew that the classes for his age
group were already at capacity .  Admin. Rec. at 236.  In order to accommodate O.O., she would
have had to establish another classroom, complete with extra staffing personnel, and some sort of
student population.  Admin. Rec. at 237.  Although Dr. Peterson felt that creating a new
classroom would have been possible, she recognized that "[Y]ou don't just wave a magic wand
and make it happen," acknowledging that it would take some time.  Admin. Rec. at 249.  She
never explained who the staff would be, who the other children would be, or what services would
be provided.  Dr. Peterson further acknowledged that once a classroom was set up for O.O., he
would have only been able to stay at Prospect until the school year concluded, since he was

---

[7]     The DCPS IEP of November 8, 2006 states on page four that, "[t]he student requires a
therapeutic setting with low student-teacher ratio."  Admin. Rec. at 651.

already thirteen and students age out of Prospect at fourteen.  Admin. Rec. at 246.[8]

At the conclusion of testimony, Hearing Officer Banks allowed counsel to review transcripts before submitting written closings.  The transcripts were considered necessary due to the three-month gap between hearing dates.  Hearing Officer's Decision at 11-12.  However, the transcript that DCPS had produced of the first hearing date was so rife with errors that both parties agreed to have it replaced.  The second transcript was better, but still contained many errors.  Both were not completed and received by the parties until June 7, 2007, almost three months after the hearing.  Hearing Officer's Decision at 12; Complaint ¶ 32.  No reason was provided for either the poor quality or the significant delay.

Plaintiffs submitted closing argument to the Hearing Officer on August 2, 2007.  DCPS submitted its closing on August 6, 2007, and plaintiffs submitted a reply on August 9, 2007.  Hearing Officer's Decision at 12; Complaint ¶ 33; Admin. Rec. at 16-25, 29-35.

Therefore, Hearing Officer Banks received all evidence by March 14, 2007.  He had all arguments by August 9, 2007.  However, he did not issue a decision until nearly three months later, on November 5, 2007.  Admin. Rec. at 2-15.  Actually, he only ruled after plaintiffs filed the original complaint in this matter, protesting the delay.  Complaint ¶¶ 34; 36.  Hearing Officer Banks admitted in his decision that he, "cannot justify the delay in completing the Decision within a reasonable period of time."  Hearing Officer's Decision at 12.  He also acknowledged, that O.O.'s education at Kingsbury is appropriate.  Hearing Officer's Decision at 12.  He then stated outright that O.O. is not receiving a *free* and appropriate public education, as required by

---

[8]    In fact, since O.O. is now fourteen, based on Dr. Peterson's testimony, Prospect is no longer available to him at all and DCPS has made no further proposals.

10

law.  After stating all of this, he held that Ms. Pabo is nonetheless not entitled to reimbursement,

as the law requires.  Hearing Officer's Decision at 13.  Ms. Pabo and O.O. appeal that final,

unsupportable decision to this Court.

## III.    SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFFS IS APPROPRIATE.

In order for summary judgment to be appropriate, a party must demonstrate that there are

no genuine facts in dispute and that one party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  An issue of fact is considered to be "genuine" if there is sufficient evidence upon

which a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the context of the IDEA, a federal court must give "due weight to the findings of the

local and state educational agencies even though it must also make an independent decision

based upon a preponderance of the evidence."  *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*,

458 U.S. 176, 205-06 (1982).  The primary source of evidence in an IDEA case must come from

the administrative hearing, and the administrative proceedings must not be considered a dry run

for protracted litigation in federal court.  *Springer v. Fairfax County Sch. Bd.*, 134 F. 3d 659, 667

(4th Cir. 1997); *Burlington Sch. Comm. v. Department of Educ.,* 471 U.S. 359 (1985), *aff'g Town*

*of Burlington v. Department of Educ. for the Commonwealth of Mass.*, 736 F.2d 773 (1st Cir.

1984).

Moreover, although a Hearing Officer's findings of fact are considered *prima facie*

correct, the Court is required to make an independent decision based upon the preponderance of

the evidence, giving due weight to the *regularly-made* findings of fact at the administrative level.

*Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991).  However, where findings

are not regularly made, or the application of the law to the facts is erroneous, the decision does not merit deference. *Teague Independent School Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993).

Deference is not due the Hearing Officer's dilatory findings here. The evidence and arguments that Ms. Pabo and O.O. set forth demonstrate beyond any reasonable doubt that the Hearing Officer disregarded relevant, reliable evidence and testimony, and that he erroneously applied the law to the facts, ***in addition to*** committing serious procedural errors. The Hearing Officer's findings were issued three months after the hearing concluded and over a year after the hearing request was filed, with no reason for the delay and in violation of federal and District law. In fact, the decision was based on faulty transcripts generated months before the decision was made, and issued only after federal suit had already been filed in order to protest the delay. All of this points to the conclusion that the findings could not possibly be "regularly made." Whatever "regularly made" connotes, this factual scenario is the polar opposite. There is nothing "regular" about any of it. Thus, the normal deference to the Hearing Officer's findings and conclusions is not warranted.

It must also be noted that, in its review of the administrative record, a district court is not required to accord absolute deference to the decision of the Hearing Officer. While the Court does afford "due weight" to the administrative decision, "the [Court must [also] independently evaluate" the facts contained in the administrative record, from both witnesses' testimony and evidence. *Heather S. v. State of Wisconsin*, 125 F.3d 1045, 1053 (7th Cir. 1997). Should this

Court determine that the Hearing Officer did make findings of fact or a decision in error, the

Court should not accord the decision any deference.[9]  These are, in fact, the circumstances here.

IV.    **THE HEARING OFFICER'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE CONTRARY TO THE LAW AND EVIDENCE.**

A.    **Procedural Violations**.

The Supreme Court has held that the right to a FAPE under the IDEA is comprised of two

equal parts, due process of law and a substantively adequate IEP.  "First, has the [educational

agency] complied with the procedures set forth in the Act, and second, is the individualized

education program developed through the Act's procedures reasonably calculated to enable the

child to receive educational benefits."  *Rowley*, 458 U.S. at 206-07.  O.O. has been deprived of a

FAPE under both sets of circumstances.

Historically, federal courts have held that "failures to meet the Act's procedural

requirements are adequate grounds by themselves for holding that a school board has failed to

provide [the student] with a FAPE."  *Board of Educ. of Cabell County v. Dienelt*, 843 F.2d 813,

---

[9]      In *Springer*, 134 F.3d 659, the Fourth Circuit clarified the standard of deference to administrative decisions first set forth in *Doyle*, 953 F.2d 100.  The *Springer* Court refused for several reasons to give deference to the administrative decision.  Where an administrative decision "turn[s] on" "the weight to be given the [parents'] evidence," the administrative decision "has no special claim to deference."  Thus, the Court held a determination of the weight to afford evidence requires an independent inquiry from that made at the administrative level.  *Id.* at 663.

Also, the *Springer* Court noted that, where the administrative decision in *Doyle* warranted deference since it contained a detailed explanation of the result, it is appropriate to afford substantially less deference to an administrative decision which is "both cursory and conclusory." *Id.*  Plaintiffs here note that the Hearing Officer erred in applying the law to the facts about O.O.'s needs, and thus without explanation arrived at a baseless legal conclusion.  This Court therefore need only supply a rationale for a holding which departs from the administrative decision.  *Id.*

815 (4th Cir. 1988) (*quoting Hall v. Vance*, 774 F.2d 629, 635 (4th Cir. 1985); *see also, Hudson By and Through Tyree v. Wilson*, 828 F.2d 1059, 1063 (4th Cir. 1987) (holding that "procedural noncompliance can itself support a finding that a child has not been provided with a FAPE"); *Gerstmyer v. Howard County Pub. Sch.*, 850 F. Supp. 361, 364-5 (D. Md. 1994); *Reusch v. Fountain*, 872 F. Supp. 1421 (D. Md. 1994).

Federal courts draw a distinction between minor procedural violations that do not effect the provision of free, appropriate educational services to the student, and violations that interfere with such a provision, or in O.O.'s case completely thwart it.  *See Gadsby v. Grasmick*, 109 F.2d 940, 956 (4th Cir. 1997).  Courts have generally considered the issue of procedural violations from the prospective of the impact of the school system's failures.  In *Sanger v. Montgomery County Bd. of Educ.*, 916 F. Supp. 518 (D.Md. 1996), the district court held that, "to the extent that there may be failure to comply strictly with the IDEA's procedures, the Court must consider whether the failures have caused a loss of 'educational opportunity' or are merely technical in nature.  *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990)."

Here, there can be no question as to the adverse educational impact of the District's procedural errors.  DCPS failed to convene a proper resolution session and failed to produce adequate transcripts of the due process hearing.  Further, the Hearing Officer's decision was issued months after the statutory deadline, and without any explanation for the delay.  Simply put, DCPS failed to provide O.O. the FAPE that is his right by its failure to comply with the clear requirements of federal and D.C. law.

1.        **DCPS Failed to Convene a Proper Dispute Resolution Session.**

The IDEA requires local educational agencies ("LEAs") to convene a resolution session following any request by a parent for a due process hearing.  The purpose of this requirement is to allow the parties to explain their positions in an effort to facilitate a resolution without the need for the formal due process hearing.  Resolution is only possible, of course, if an appropriate resolution session is held.  Specifically, the IDEA requires that:

> [p]rior to the opportunity for an impartial due process hearing...the local educational agency shall convene a meeting with the parents and *the relevant member or members of the IEP team who have specific knowledge of the facts identified in the complaint*–
> . . .
>
> (II) which shall include *a representative of the agency who has decisionmaking authority on behalf of such agency*;
> . . .
>
> (IV) where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency *is provided the opportunity to resolve the complaint* . . . .

20 U.S.C § 1415(f)(1)(B) (emphasis supplied).  As acknowledged by Hearing Officer Banks during the hearing **but not in his decision**, DCPS failed to hold a legal resolution session in this case by having nobody present (1) who was a member of the IEP team and had specific knowledge of the facts, or (2) who had decision-making authority.  Admin. Rec. at 346-347. Only one DCPS representative, Kymberly Grafton, attended the meeting; she was not a member of O.O.'s IEP team, was not familiar the facts of his case, and had no authority to make decisions on the part of DCPS.  Admin. Rec. at 604.  Her only role was to state the pre-existing position of DCPS.  Complaint ¶ 28; Admin. Rec. at 604.  DCPS therefore violated the law and frustrated the possibility of reaching a solution prior to hearing.  In view of what the Hearing Officer

15

subsequently decided as to Ms. Pabo's involvement in the IEP/placement process, this violation of the Dispute Resolution Session ("DRS") process is critical.  It could not be ignored, as the Hearing Officer did.

This is true because the Hearing Officer appears to base his entire decision on his belief that O.O. and Ms. Pabo obstructed the process through their  counsel's "intentional frustration of DCPS's attempt to convene a follow-up placement meeting." He concludes that plaintiff and her counsel, "acted unreasonably in refusing to attend" this meeting.  Hearing Officer's Decision at 10-11.  Explicitly, the Hearing Officer goes on to deny appropriate relief to  O.O.  because of "strategic decisions made by his attorney."  Hearing Officer's Decision at 13.  Exactly what "strategic decision" he is referring to is not clear; perhaps he is referring to Ms. Pabo advising DCPS that she saw no reason to attend its final meeting after she had already served her notice rejecting the proposed placement and had filed her Due Process Appeal.[10]

Even if the Hearing Officer's factual rationalizations are accurate, given this Court's recent decision in *Peak v. District of Columbia*, 2007 WL 4145458 (D.D.C. 2007), his decision was incorrect.  In *Peak*, the Hearing Officer similarly found that plaintiff counsel's refusal to

---

[10]     The Hearing Officer finds that Ms. Pabo did not formally reject the proposed placement prior to filing her due process complaint.  This is both incorrect and inconsistent with the record.  While the meeting notes from the August 30th meeting incorrectly state that Ms. Pabo did not make a decision about Prospect, the record reveals a different story.  Ms. Pabo did reject the proposed program on August 30th, and then requested funding and placement at Kingsbury.  Following this, she filed a due process appeal and in multiple letters confirmed her rejection of the proposed placement at Prospect.  It should also be noted that the meeting notes are written by a DCPS representative and are not approved by the parent for their accuracy.  In this case, the notes are not a reflection of what occurred at the meeting.
     The Hearing Officer also finds that prior to filing her appeal, Ms. Pabo did not inform DCPS of her intent to enroll O.O. at Kingsbury.  This is also incorrect.  At the August 30th meeting, Ms. Pabo requested funding and placement at Kingsbury for O.O. and provided the team with specific reasons as to why she felt that Kingsbury was the proper placement for him.

attend a third multidisciplinary team meeting convened by DCPS justified dismissal of plaintiff's claims. *See Peak* at *3. The Court reversed and held that this dismissal of substantive claims based on plaintiff counsel's failure to attend an MDT meeting was unjustified. "Although the Court does not condone the refusal of plaintiff's counsel to participate in an MDT meeting before seeking a due process hearing, it cannot agree that the refusal can serve in this case as the basis for denying plaintiff's claim for compensatory education for IDEA violations that preceded [that] meeting." *Id.* at *4. O.O.'s situation is on all fours with *Peak* and the Hearing Officer committed error by denying relief to Ms. Pabo and O.O. on the basis that Ms. Pabo and her counsel did not attend the September 8th, meeting when they had already rejected the proposed placement and filed a due process complaint based on previous IDEA violations.

However, even were the Hearing Officer correct (which he plainly is not), nowhere does he take into account the overarching, obstructive strategies used by DCPS in order to intentionally frustrate the dispute resolution session. This is particularly unfortunate here because an appropriate, legal resolution session would have served the same role as the "follow-up placement meeting" referred to by the Hearing Officer in his decision. Hearing Officer's Decision at 10. In essence, the Hearing Officer places the blame on Ms. Pabo for not attending the September meeting, even though it is clear from the system's own meeting notes that DCPS had already made its placement proposal and that Ms. Pabo had officially rejected it. The Hearing Officer speculates without factual predicate that, if Ms. Pabo had attended, "[p]erhaps DCPS would have facilitated the immediate staffing increase at PLC (Prospect). Perhaps DCPS would have concluded that PLC was no longer an appropriate placement option. Perhaps DCPS would have acceded to the Parent's request to place Petitioner (O.O.) at Kingsbury." Hearing

Officer's Decision at 10.  There is nothing in the evidence to suggest *any* of this.  Still, the Hearing Officer concludes that the mere possibility that any of these conclusions would have been reached at this meeting is grounds enough to bar *all* relief to O.O. because his mother did not attend.  *Id.*

What the Hearing Officer speculates makes no sense in view of what occurred in the DRS.  The "follow-up placement meeting" was held on September 21, 2007, a week after the appeal was filed.  The defective dispute resolution session was held five days later, on September 26, 2007. Complaint ¶¶ 26, 28.  There is no reason why, if DCPS was willing to consider *any* of the above options on the 21st, that it was not open to consider them five days later when that is the very purpose of the DRS.[11]  That is why the IDEA requires DCPS to send someone to the session who would actually have the power to adopt any of those responses.

The Hearing Officer concludes that, "tuition reimbursement was the only goal [of the parent] in this proceeding," but fails to recognize that DCPS did not offer the parent any other options because it failed to do anything at the dispute resolution session other than state its pre-existing position.  That was the position that DCPS knew Ms. Pabo had already rejected. Hearing Officer's Decision at 12.  It is incredible to assume that DCPS would have changed its mind at one meeting when it refused to do so at another meeting five days later, while at the same time assuming that the parent was not open to resolving the conflict had she been given any options other than the Prospect placement she had already rejected.

---

[11]     In fact, the notes from the resolution session reflect that, "the parent has observed at Prospect and has a number of concerns with what she saw, but there is no one to present those issues to."  Admin. Rec. at 604.

This procedural violation on the part of DCPS eviscerates the Hearing Officer's sole basis for denial of tuition funding.  It was unaccountably ignored in the decision.  As this Court has held, DCPS is required to do more than "pay lip service to its responsibilities under the IDEA . . . while making no apparent effort to actually comply with them."  *Massey v. District of Columbia*, 400 F.Supp.2d 66, 71 (D.D.C. 2005).  "DCPS cannot be allowed to disregard the procedural requirements" of the IDEA.  *Id.* at 76.  This Court has found that violation of the procedural requirements, including the failure to hold an appropriate resolution session, can itself constitute the denial of a free appropriate education.  *See Massey* at 75 (quoting *Blackman v. District of Columbia*, 277 F.Supp.2d 71, 79 (D.D.C. 2003)).  The Court noted that the resolution session is an important part of the administrative process that, "allows the agency to apply its specialized expertise to the problem . . . gives the agency an opportunity to correct its own errors [and] ensures that there will be a complete factual record for the court to review." *Spencer v. District of Columbia*, 416 F.Supp.2d 5, 10 (D.D.C. 2006).  The inadequate resolution session in this case did not allow for any of these objectives and constitutes a clear procedural violation.

> 2.    **DCPS Failed to Produce Adequate Transcripts of the Hearing.**

One of the fundamental safeguards provided to parents by the IDEA is the right to a written *verbatim* record of the due process hearing.  20 U.S.C. §1415 (h)(3) (emphasis supplied). In IDEA cases, "A written transcript of the testimony and evidence adduced before the [Hearing Officer] is an essential tool for the effective review of the [Hearing Officer's] determination."

*Militello v. Board of Educ.* 803 F. Supp. 974, 978 (D. N.J. 1992).[12]  Defendants bear this

statutory responsibility.

In this case, the transcript of the first day of the hearing (January 16, 2007) was so riddled

with errors that *both* parties agreed to have it replaced.  Complaint ¶ 32.  The second transcripts,

which contained both days of the hearing, were better than the first but still contained many

errors, including misspellings of the names of several witnesses and the lack of certification by a

court reporter.  *Id.*  In addition, the final transcripts were not completed until June 5, 2007, three

months after the hearing.  Hearing Officer's Decision at 12.  The inaccuracies in the transcripts

and the delay in receiving them contributed to the violation of applicable timelines in this case,

thus delaying relief for O.O. and Ms. Pabo.  No reason or justification for these violations was

ever provided.

> **3.**    **The Hearing Officer Failed to Issue a Decision Within the Mandated
> Period of Time.**

The Code of Federal Regulations requires that the public agency reach a final decision

and mail it to the parties no later than forty-five days after the expiration of the thirty-day

resolution period.  34 C.F.R. § 300.515(a).  Moreover, the DCPS Special Education Hearing

Office requires that the final decision must be issued no later than ten days following the hearing

and no more than seventy-five days following the request for hearing.  DCPS Standard Operating

Procedures Manual § 1003.  The hearing request in this case was filed on September 14, 2006,

---

[12]    The Department of Education also recognizes how essential this tool is.  "Access to a
written verbatim record of the hearing is vital for parents to exercise their full due process
rights."  64 Fed. Reg. 12406, 12614 (March 12, 1999).

and the resolution period thus expired in October of 2006.  The hearing concluded on May 14,

2007.

However, the Hearing Officer did not issue a decision until November 5, 2007, "long

after the 45-day deadline," and all other deadlines had passed.  Hearing Officer's Decision at 11.

Although delays in transcripts and scheduling difficulties can account for some of the delay, there

is absolutely no explanation for the three-month gap between the submission of closing

arguments and the issuance of the final decision.  The Second Circuit has noted that courts

should not acquiesce in such egregiously late decisions at the administrative level.  "[I]f such

unjustified delays in the SRO review process (New York's administrative process) are

countenanced, school districts and the State will have strong incentive to delay administrative

decisions as a means of deferring or, worse yet, avoiding financial responsibility."  *Mackey v. Bd.*

*of Educ. for the Arlington Central Sch. Dist.*, 386 F.3d 158, 166 (2d Cir. 2004) (quoting *Murphy*

*v. Arlington Central Sch. Dist. Bd. of Educ.*, 86 F.Supp.2d 354, 367 (S.D.N.Y. 2000)).  If

Hearing Officers are allowed to issue such late decisions without explanation and without

consequence, they will have no incentive to comply with the required deadlines:  more late

decisions will issue.  For children such as O.O., who are already behind and have little time to

catch up, such delays are unacceptable.

The Hearing Officer "justifies" his delay here by assuming that Ms. Pabo was "only"

seeking tuition reimbursement and because O.O. did not suffer educational harm as a result of the

delay since he was currently receiving an appropriate education, albeit not a free one.  Hearing

Officer's Decision at 12-13.  That badly misses the point, amounting to little more than sophistry.

The fact that Ms. Pabo took affirmative action at her own expense to ensure that O.O. did not

suffer harm during the lengthy hearing process, and during the long wait for the decision, in no

way relieves DCPS of its obligation to provide a FAPE or the Hearing Officer of his obligation to

comply with the statutory deadlines.  The IDEA's mandate requires school districts to provide

FAPE to all disabled children, regardless of parental resources.  The Hearing Officer's theory

collides head-on with long-standing Supreme Court law.  "The Act was intended to give

handicapped children both an appropriate education and a free one; it should not be interpreted to

defeat one or the other of those objectives."  *Burlington*, 471 U.S. at 372.

It is clear that in the District of Columbia, failure to conclude a timely due process

hearing is in and of itself a denial of FAPE.  "[W]here DCPS has outright denied a child a timely

due process hearing, DCPS cannot claim that the denial of a free appropriate education has not

occurred.  It has."  *Blackman*, 277 F.Supp.2d at 80; *see also Walker v. District of Columbia*, 157

F.Supp.2d 11, 31-32 (D.D.C. 2001).  *Blackman* makes clear that this is true regardless of whether

or not a child's parents can afford to place him or her in an appropriate placement pending the

delayed outcome of the due process hearing.  "The children cannot be denied their substantive

right to a free appropriate education under the IDEA because they are fortunate enough to have

parents who can afford to fund their education in private schools while waiting for DCPS to

provide the hearings required by law . . . ."  *Id.*  The Court's opinion also makes clear that the

failure to provide a timely due process hearing is in itself a substantive denial of FAPE.  "The

conclusion that a *per se* harm results from the denial of a free appropriate education stemming

from the failure to provide a timely due process hearing relieves plaintiffs from any burden to

articulate an additional, particularized harm."  *Id.*  The admittedly unjustifiable late decision of

the Hearing Officer in this case constitutes a significant and dispositive  denial of FAPE to O.O.

B.      **Substantive Violations**

    1.      **DCPS Never Offered O.O. an Appropriate Placement, or Any Placement At All.**

It is fundamental that the IDEA requires school districts to offer a placement to every child, as well as notice to parents when the district proposes a change in placement.  20 U.S.C. § 1415 (b)(3).  A school district fails to provide FAPE when it fails to provide a particular school where the child can be educated.  *See A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 680-81 (4th Cir 2007).  DCPS has not done so here.  Throughout the lengthy administrative process, it was unclear where O.O. would attend school if his mother stopped paying for Kingsbury.  It remains unclear where O.O. would go to school today if he were no longer able to attend Kingsbury at Ms. Pabo's expense.  This is not a free or appropriate education.

The August 30, 2006 IEP, created during the MDT meeting that Ms. Pabo was present for, does not contain a placement.  However, the notes on placement plainly state that, "DCPS [is] *proposing* Prospect LC."  Admin. Rec. at 672 (emphasis added).  Notes from the September 21, 2006 MDT meeting, which Ms. Pabo did not attend, indicate that DCPS believes Prospect is an appropriate placement despite the fact that the notes emphatically state, "There are 2 13 yr old classrooms, although they are at capacity!"  Admin. Rec. at 759-80.  The most recent DCPS IEP, dated November 11, 2006,  lists Prospect Learning Center as the location for services.  As noted by Dr. Peterson, principal of Prospect, there never was any space for O.O. at Prospect.  Admin. Rec. at 236; Admin. Rec. at 528.  If O.O. had shown up at Prospect on September 21, 2006, the day that DCPS issued the notice of placement, it is unclear what he would have done, but he would not have had a class to attend.  Further, it is clear that if O.O. showed up at Prospect today,

he could not be taught in any classroom because he is too old for the school.  Admin. Rec. at 408;

Hearing Officer's Decision at ¶ 8.  DCPS has never offered a placement appropriate to O.O.'s

needs and age.  Quite simply, DCPS did not give O.O. any education at all.

### 2.    The IEP Drafted by DCPS Contained Numserous Errors and Was Not Calculated to Provide O.O. With a FAPE.

In addition to the lack of placement, the substance of the DCPS IEP contained numerous

errors and was not calculated to provide O.O. with a FAPE as required by the IDEA.  Dr.

Solomon, the only witness qualified as an expert in the hearing, testified to many substantive

deficiencies in the IEP.  First, although the goals and objectives on the IEP were appropriate, the

goals were not written in any measurable way.  Admin. Rec. at 395.  Next, the IEP states that

O.O. will be in general education for 15% of the school day, despite the fact that O.O. needs full-

time special education *and* despite the fact that the school system's own proposed placement

could not provide a general education setting.  Admin. Rec. at 401-04, 407.  Finally, the IEP

states that services will be provided by general education and/or special education teachers, but

the IEP's goals and objectives cannot be implemented by a general education teacher.  Admin.

Rec. at 405.

### 3.    The Hearing Officer Unaccountably Ignored the Only Expert Testimony Regarding O.O.'s Needs.

The Hearing Officer only accepted one witness as an expert in the field of special

education.  Admin. Rec. at 368.  That witness, Dr. Laura Solomon, testified on behalf of the

plaintiff and unequivocally stated that DCPS' proposed placement is inappropriate for O.O. and

that Kingsbury is an appropriate placement.  Admin. Rec. at 412.  None of DCPS' witnesses

were accepted as experts by the Hearing Officer, and in fact the Hearing Officer himself

commented on the lack of preparedness and expertise on the part of one DCPS witnesses, Jermaine Perkins. Admin. Rec. at 217-18. Nonetheless, the Hearing Officer's decision fails to give any weight to the unrebutted expert testimony of Dr. Solomon regarding the inappropriateness of the IEP itself and of the proposed placement. We are not arguing that a Hearing Officer has to follow a particular expert's opinion, but when that opinion is not challenged in testimony and it is the only special education expert opinion provided, there at least has to be some discussion or explanation of why it is being disregarded. Here, there was nothing.

> **4.    The Hearing Officer Erred in Concluding That Plaintiff's Counsel Intentionally Obstructed DCPS and in Denying O.O. a Free and Appropriate Public Education on That Basis.**

The IDEA states that, ". . . a decision made by a hearing officer shall be made on *substantive grounds* based on a determination of *whether the child received a **free** appropriate education*." 20 U.S.C. § 1415 (f)(3)(E)(I) (emphasis supplied). The IDEA also provides that a Hearing Officer may grant relief to the child based on procedural (as opposed to substantive) violations on the part of the school system, *see* 20 U.S.C. § 1415 (f)(3)(E)(ii), but nowhere does it contemplate that a Hearing Officer can deny a child a free and appropriate education based on allegedly inappropriate procedural tactics used by the child's counsel. This is exactly what Hearing Officer Banks did when he found that, "[w]hile Petitioner is not receiving a *free* education, strategic decisions made by his attorney deprived Petitioner of any entitlement to reimbursement." Hearing Officer's Decision at 13 (emphasis in original). Even were there a factual basis for this conclusion, plaintiffs are unaware of any statutory provision or case law that permits a Hearing Officer to deny a free and appropriate education to a child based solely on the actions of the child's attorney. To do so would run contrary to the command of *Burlington* that

25

the IDEA, "was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." *Burlington,* 471 U.S. at 372.

Hearing Officer Banks relies on 35 C.F.R. § 300.148(d)(3), which states that reimbursement can be denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents," in order to justify his denial of reimbursement. Hearing Officer's Decision at 11; *see also* 20 U.S.C. § 1412 (a)(10)(C)(iii)(III). On its face, this regulation applies to parental conduct, not to the conduct of the child's attorney. More fundamentally, neither Ms. Pabo, O.O.'s mother, nor O.O.'s counsel acted unreasonably in this case. It is well-established that reimbursement is appropriate where "parents diligently pursued the provision of appropriate services from the public school system, yet the school system failed to provide those services." *A.S. v. Five Town Cmty. Sch. Dist.*, 2008 WL 162481 at *9  (1st Cir. 2008) (citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 12 (1993)). Reimbursement may not be appropriate where "parents' actions disrupted the IEP process," *Id.* at *7. Unreasonableness may not be found as a matter of law where there is "a significant disputed factual issue of whether . . . parents were gaming the system to extract free tuition for private school or simply hedging their bets when faced with a demonstrably under-resourced public school system." *Loren F. v. Atlanta Indep. Sch. System*, 349 F.3d 1309, 1318 (2003).

There is nothing in this record to suggest that Ms. Pabo was "gaming the system" to get private school tuition. *Id.* Ms. Pabo sent O.O. to District of Columbia public schools for *seven years*, from pre-kindergarten through fifth grade, until it became clear that he was not getting an appropriate education. Admin. Rec. at 503-07. She then enrolled him in a parochial school,

OLV, at her own expense, and has not sought reimbursement for that expense.  Admin. Rec. at

507-08.  She initiated the IEP process with DCPS in April of 2006, *three months prior* to

contacting Kingsbury in July of 2006. Admin. Rec. at 514-18.  It is not unreasonable for a parent

to fill out an application for a private school prior to seeking services from a public school.  *See*

*Loren F.*, 349 F.3d at 1317-18.  Nevertheless, Ms. Pabo *did* enroll her child in public school for

many years and she *did* in good faith seek services from the public school system before even

considering Kingsbury.  It is thus the Hearing Officer, and not Ms. Pabo, who is being

unreasonable when he states that, "it was apparent that tuition reimbursement was the only goal

in this proceeding, not a DCPS placement."  Hearing Officer's Decision at 12.  There is ample

evidence in the record to show that Ms. Pabo would in fact have accepted an appropriate DCPS

placement had one been offered, not the least of which is the fact that she sent O.O. to DCPS

schools for seven years.

Furthermore, after initiating the IEP process with DCPS, Ms. Pabo did follow through in

good faith and did not act unreasonably.  She attended the initial MDT meeting in April, *see*

Admin. Rec. at 517;  she attended a subsequent MDT meeting on August 30th, *see* Admin. Rec.

at 519;  and she formally rejected the proposed placement of Prospect at that meeting, *see*

Admin. Rec. at 393, 525.  She then visited Prospect not once but twice, although this did not

change her mind.  Admin. Rec. at 526, 529.  She did not attend the "follow-up" meeting, simply

because she had already rejected the placement and had not changed her mind.   Hearing

Officer's Decision ¶ 14.   Had DCPS convened the proper dispute resolution session that Ms.

Pabo (and her attorney) tried so hard to make happen, then all of this would have been discussed

before hearing.  The fact that Ms. Pabo did not agree with the final decision of DCPS does not

mean that she behaved unreasonably toward DCPS; to the contrary the evidence shows that she participated in the process in good faith at every step of the way. Neither she nor her counsel made "strategic decisions" in violation of the IDEA, whatever the Hearing Officer may have meant by that.

## V.    THE PROPER REMEDY FOR DEFENDANTS' VIOLATIONS IS PLACEMENT AND FUNDING AT KINGSBURY SCHOOL.

The appropriate remedy for defendants' IDEA violations is the reimbursement of the cost of his private placement at Kingsbury for the entire 2006-07, and 2007-08 school year. This U.S. Supreme Court agrees:

> When a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."

*Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156 (4th Cir. 1991) (*quoting Rowley*, 458 U.S. at 207); *see also Burlington*, 471 U.S. 359. Therefore, placement and funding for O.O. at Kingsbury is the appropriate remedy under the IDEA.

Under the Supreme Court's decisions in *Burlington* and *Carter*, once it has been determined that defendants failed to provide O.O. with a FAPE, the Court's inquiry then turns directly to the propriety of the parental placement. "Public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice." *Carter*, 510 U.S. at 13. Thus, the appropriate inquiry for this Court is twofold: first, whether the school system has offered O.O a FAPE, and second, whether Kingsbury is a proper educational placement for O.O. Since DCPS failed to

provide O.O. an appropriate placement, his parent was justified and correct in selecting a placement that was appropriate for her son's needs.

Kingsbury is a proper placement for O.O., as evidenced by the fact that he has made significant improvements during his time there.[13] Dr. Solomon testified about his progress and noted, "He is benefiting [sic] from the placement [at Kingsbury].  I had an opportunity to interview his teacher and the program coordinator for his section for the middle school and his mother.  And he is making progress.  I had an opportunity to review some work samples from the beginning of the school year to this point in time, and he is indeed making progress.  Admin. Rec. at 414.   When asked whether she believed that O.O. was appropriately placed at Kingsbury, Ms. Gustafson replied, "Yes, we do."  Admin. Rec. at 473.

There is not, and never has been, any dispute about the positive effect that Kingsbury has had on O.O.  If this Court finds that DCPS did indeed fail to offer O.O. a FAPE for the 2006-07 school year, then *Burlington* dictates that an appropriate remedy is, at a minimum, to order DCPS to place and fund O.O at Kingsbury.

## VI.    CONCLUSION.

Since the Hearing Officer failed to order the appropriate remedy for defendants' violations of the IDEA, and violated plaintiffs' rights himself, we respectfully submit that this Court should correct his error and order DCPS to place and fund O.O. at Kingsbury retroactive to

---

[13]     Plaintiffs note that the applicable standard is not whether the placement that Ms. Palo selected can provide O.O with the "best education, public or non-public, that money can buy," but whether it can provide the appropriate education that the school system did not.  *Hessler v. State Bd. of Educ. of Maryland*, 700 F.2d 134, 139 (4th Cir. 1983); *Rowley*, 458 U.S. 176.  The two-step inquiry before the Court allows the Court, having determined that the school system denied O.O. a FAPE, to determine whether Kingsbury is a proper placement.

the start of the 2006-07 school year.  Because there are no material facts in dispute and because

plaintiffs are entitled to judgment as a matter of law, plaintiffs respectfully request that this Court

enter summary judgment against defendants, that the Hearing Officer's order be reversed, and

that defendants be ordered to reimburse plaintiffs for the expenses incurred in enrolling O.O. at

Kingsbury for the 2006-07 and 2007-08 school years, with costs and attorneys' fees.


Respectfully submitted,

/s/ (filed electronically)

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Patricia F. Cyr | #490755 |

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for O.O. and Claudia Pabo

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

O.O., by his parent and next friend,
CLAUDIA PABO

      Plaintiffs,

      v.

DISTRICT OF COLUMBIA, *et al.*,

      Defendants.

Civil Action No. 07-1863 (JDB)

**ORDER**

Upon consideration of the plaintiffs' motion for summary judgment, along with the related pleadings and any opposition thereto, it is the finding of the Court that the facts are not in dispute, that the plaintiffs are entitled to judgment as a matter of law, and it is by the Court, this _____ day of _____, 2008, hereby

ORDERED, that plaintiffs' motion for summary judgment be and the same is hereby GRANTED; and it is

FURTHER ORDERED, that the administrative decision is reversed, and it is

FURTHER ORDERED, that defendants are to reimburse the plaintiffs for the costs incurred in enrolling O.O. at Kingsbury Day School from the start of the 2006-07 school year through the current date, with attorneys' fees and costs.

_____
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

O.O., by his parent and next friend,
CLAUDIA PABO,

　　　　　Plaintiffs,

　　　　　v.

DISTRICT OF COLUMBIA, *et. al.*,

　　　　　Defendants.

Civil Action No. 07-1863 (JDB)

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7.1(h), plaintiffs submit this statement of material facts as to which there is no genuine issue.

1.　　　O.O. was born in Russia and spent the first five years of his life in two different Russian orphanages, the second of which was an orphanage specifically for children with disabilities.  Administrative Record at 503, 707.[1]

2.　　　Ms. Pabo adopted O.O. and brought him to the District of Columbia as he turned five.  Admin. Rec. at 503.  She enrolled him in the District of Columbia Public Schools at Hearst Elementary School.  Although five-year-olds normally start school in kindergarten, O.O. was not ready for kindergarten and so began pre-Kindergarten at Hearst,  leaving him one year behind his peers.  Admin. Rec. at 504.

3.　　　O.O. remained at Hearst until third grade.  Admin. Rec. at 504; Complaint ¶ 8. DCPS never evaluated him for special education and he did not receive any special education

---

[1]　　These are citations to the Administrative Record which was submitted to the Court on January 11, 2008.  Citations to the Administrative Record will appear as Admin. Rec. at __.

services at that time, although he did receive English as a Second Language ("ESL") services. Admin. Rec. at 505-07.

4.    O.O. moved to John Eaton Elementary, also a DCPS school, for fourth and fifth grades.  Admin. Rec. at 505.  He did not receive any special education services at John Eaton, although he continued to receive ESL services.  Admin. Rec. at 507.

5.    Ms. Pabo removed O.O. from John Eaton and enrolled him at Our Lady of Victory ("OLV"), a private school, for the 2005-06 school year.  Admin. Rec. at 507-08. Although he had already completed fifth grade at John Eaton, O.O. was not ready to begin sixth grade at OLV.  He was placed in fifth grade again, leaving him two years behind his peers. Admin. Rec. at 504; Complaint ¶ 8.

6.    Despite repeating a grade he had just completed, O.O. experienced great academic difficulty at OLV.  Ms. Pabo spent three to five hours per night helping him with his schoolwork. Admin. Rec. at 509; Complaint ¶ 9.

7.    At the end of the year, on May 3, 2006, Dr. Ronald S. Federici completed a neuropsychological evaluation of O.O.  Dr. Federici's report noted the following disabilities: cognitive and language disorders, dyslexia, Attention Deficit Hyperactivity Disorder ("ADHD"), and Post-Traumatic Stress Disorder.  Dr. Federici also noted that O.O.'s learning disabilities are related to the fact that he suffers from Fetal Alcohol Syndrome.  Hearing Officer's Decision ¶ 3; Admin. Rec. at 849-75.

8.    After reviewing the report, Ms. Pabo and the principal of OLV decided that it was not in O.O's best interests for him to return the following year.

9.      In the spring of 2006, Ms. Pabo contacted DCPS to determine O.O.'s eligibility for special education and find an appropriate placement.  Admin. Rec. at 514; Complaint ¶ 10.

10.     On April 26, 2006, a DCPS multidisciplinary team ("MDT") meeting was held. The team found it necessary to conduct evaluations and observations of O.O. before discussing a placement and services.  Admin. Rec. at 517; Complaint ¶ 11.

11.     DCPS subsequently completed classroom observations and evaluations throughout the spring and summer of 2006.  Admin. Rec. at 517; Complaint at ¶ 11.

12.     Ms. Pabo applied to Kingsbury Day School ("Kingsbury"), a private special education day school, in July of 2006.  O.O. visited Kingsbury for two days during the summer. Admin. Rec. at 518.

13.     Ms. Pabo also retained the services of an educational advocate, Dr. Laura Solomon, who completed additional evaluations during August of 2006.  Admin. Rec. at 365; Hearing Officer's Decision ¶ 5.

14.     Dr. Solomon determined that O.O. needed an intensive, full-time special education program for the 2006-07 school year.  Hearing Officer's Decision ¶ 5; Admin. Rec. at 799-819.

15.     On August 10, 2006, an MDT meeting was held without Ms. Pabo.  Ms. Pabo had advised DCPS that she would not be available on that date, but DCPS ignored her request to reschedule and had the meeting without her.  Complaint ¶ 13.

16.     On August 10, 2006, the team found O.O. eligible for special education but did not complete the required Individualized Education Program ("IEP") or propose a placement. Complaint ¶ 13.

3

17.     On August 30, 2006, another MDT meeting was held, this time with Ms. Pabo and Dr. Solomon in attendance.  Complaint ¶ 15; Admin. Rec. at 519.  The MDT classified O.O. as a student with multiple disabilities and determined that he needed a full-time special education program.  Complaint at ¶ 16; Hearing Officer's Decision ¶ ¶ 6-7.

18.     Ms. Pabo requested that DCPS place O.O. in the full-time special education program at Kingsbury.  Admin. Rec. at 672.  DCPS, in turn, proposed its own Prospect Learning Center. Complaint ¶ 16; Admin. Rec. at 393. 525, 672.

19.     Dr. Solomon and Ms. Pabo formally rejected the proposed placement at Prospect, but did agree to go observe the program.  Admin. Rec. at 393.

20.     After proposing Prospect, DCPS did not propose any other placements.

21.     Ms. Pabo and Dr. Solomon arranged to visit Prospect on September 7, 2006. Admin. Rec. at 526.

22.     Because she had already visited Kingsbury and determined it to be appropriate, and had not yet had a chance to visit Prospect, Ms. Pabo enrolled O.O. in Kingsbury at her own expense prior to the start of the 2006-07 school year.  Complaint ¶ 22; Hearing Officer's Decision ¶ 12.

23.     On September 7, 2006, Dr. Solomon and Ms. Pabo visited Prospect and met with its director, Dr. Eve Peterson.

24.     Neither Ms. Pabo nor Dr. Solomon found the program at Prospect to be appropriate for O.O.  There was not any space for O.O. at Prospect.  The classes for children of O.O.'s age group were at capacity.  Admin. Rec. at 412.  Dr. Peterson clearly stated that the classes for thirteen-year-olds were all full.  Admin. Rec. at 236, 528.

4

25.    O.O. would age out of the program in less than a year.  Ms. Pabo did not feel that Prospect was an appropriate placement for O.O.  Admin. Rec. At 408.  Hearing Officer's Decision at ¶8.

26.    Ms. Pabo returned to Prospect for one more visit in December, 2006.  The school still did not have an opening for O.O., and Ms. Pabo still felt that the curriculum and class size continued to be inappropriate for O.O.'s identified needs.  Admin. Rec. at 529.

27.    On September 8, 2006, DCPS invited Ms. Pabo to a "placement" meeting to again discuss Prospect.  Complaint  ¶ 23; Hearing Officer's Decision ¶ 11.  However, because she had already rejected the proposal at the previous meeting on August 30, had in fact filed her Due Process Appeal of that proposal, and had subsequently visited without a change of mind, Ms. Pabo notified DCPS that she would not be attending the meeting and had rejected the placement.  Hearing Officer's Decision ¶ 14; Admin. Rec. 787-90.

28.    On September 21, 2006, DCPS held the meeting anyway, without Ms. Pabo.  Complaint ¶ 26.

29.    On September 14, 2006, Ms. Pabo filed a due process complaint notice, appealing the decision of the August 30, 2006 meeting to place O.O. at Prospect and requesting placement at Kingsbury.  Hearing Officer's Decision ¶ 13; Admin. Rec. at 782-86.

30.    DCPS convened a resolution session on September 26, 2006, but only sent one person to the meeting; that person had neither decision-making authority nor any knowledge of O.O.

31.    No members of the MDT attended the dispute resolution session.  Complaint ¶ 28; Admin. Rec. at 604.

32.     Nothing was resolved at this dispute resolution session.   Complaint ¶ 8.

33.     On January 16, 2007, the due process hearing began before Hearing Officer Terry Michael Banks.

34.     Dr. Laura Solomon, who qualified as an expert in special education, testified as to O.O.'s severe attentional issues and cognitive deficits.  Admin. Rec. at 377-79.  She further testified that O.O. needs a full-time special education placement in order to access education. Admin. Rec. at 387.

35.     Dr. Solomon stated that in her expert opinion, O.O. would not be expected to make meaningful academic progress at Prospect.  Admin. Rec. at 412.

36.     Dr. Solomon's expert testimony went unrebutted.

37.     Dr. Solomon was the only witness from either side accepted as an expert by Hearing Officer Banks.  Admin. Rec. at 368.

38.     Ms. Marlene Gustafson, the Director of Kingsbury Day School, testified that O.O. was appropriately placed at Kingsbury and is benefitting from the program there.  Admin. Rec. 471-72.

39.     She also testified that O.O. would be able to continue at Kingsbury through twelfth grade without changing schools.  Admin. Rec. at 477.  Ms. Gustafson explained that at Kingsbury, O.O. is in a class of only ten students with both a lead and an assistant special education teacher.  Admin. Rec. at 147-48.

40.     Ms. Pabo then testified as to O.O.'s history and his success at Kingsbury in contrast to his prior public and parochial school experiences.  Admin. Rec. at 534-35.  Ms. Pabo

also explained why she found Prospect to be inappropriate and why she found the classes there to be too large and noisy for O.O. to succeed.  Admin. Rec. at 527-30.

41.    The hearing could not be concluded on January 16th and was not reconvened until March 14, 2007.  Hearing Officer's Decision at 12.  On the second hearing date, Dr. Denise White-Jennings testified as a psychologist on behalf of DCPS and acknowledged that O.O. suffers from severe ADHD.  Admin. Rec. at 132.

42.    Cindy Brown, a social worker with DCPS, testified as to O.O.'s need for small-group instruction and a structured classroom setting.  Admin. Rec. at 163-64.

43.    Ms. Brown, a member of the MDT committee, further testified that she knew, based on a letter written by Ms. Pabo's counsel in late September, that Ms. Pabo understood Prospect to be the proposed placement and that she rejected it.  DCPS never responded to this letter or otherwise indicated that it felt Ms. Pabo's understanding was incorrect.  Admin. Rec. at 183-84.  Ms. Brown further confirmed the deficiencies in the IEP meetings, such as the lack of a general educator.  Admin. Rec. at 184.

44.    Jermaine Perkins, a psychologist for DCPS, testified as to the IEP meetings that were held for O.O.  However, the Hearing Officer himself noted that Mr. Perkins was not prepared to testify, knew very little about the case, and was not an expert.  Admin. Rec. at 217-18.

45.    Finally, Dr. Eve Peterson, the Director of Prospect, testified by telephone.  She explained that, upon reviewing O.O.'s IEP as drafted by DCPS, she first concluded that Prospect would not be able to meet his needs.  Admin. Rec. at 231.

46.    Dr. Peterson further testified that Prospect is not a therapeutic learning environment, as is required by the proposed DCPS IEP.  Admin. Rec. at 234.

47.    Dr. Peterson also admitted that, when she received O.O.'s referral, she knew that the classes for his age group were already at capacity .  Admin. Rec. at 236.  In order to accommodate O.O., she would have had to establish another classroom, complete with extra staffing personnel, and some sort of student population.  Admin. Rec. at 237.

48.    Although Dr. Peterson felt that creating a new classroom would have been possible, she recognized that "[Y]ou don't just wave a magic wand and make it happen," acknowledging that it would take some time.  Admin. Rec. at 249.

49.    She never explained who the staff would be, who the other children would be, or what services would be provided.  Dr. Peterson further acknowledged that once a classroom was set up for O.O., he would have only been able to stay at Prospect until the school year concluded, since he was already thirteen and students age out of Prospect at fourteen.  Admin. Rec. at 246.

50.    At the conclusion of testimony, Hearing Officer Banks allowed counsel review transcripts before submitting written closings.

51.    The transcripts were considered necessary due to the three-month gap between hearing dates.  Hearing Officer's Decision at 11-12.  However, the transcript that DCPS had produced of the first hearing date was so rife with errors that both parties agreed to have it replaced.  The second transcript was better, but still contained many errors.

52.    Both were not completed and received by the parties until June 7, 2007, almost three months after the hearing.  Hearing Officer's Decision at 12; Complaint ¶ 32.  No reason was provided for either the poor quality or the significant delay.

8

53.    Plaintiffs submitted closing argument to the Hearing Officer on August 2, 2007.
DCPS submitted its closing on August 6, 2007, and plaintiffs submitted a reply on August 9,
2007.  Hearing Officer's Decision at 12; Complaint ¶ 33; Admin. Rec. at 16-25, 29-35.

54.    Hearing Officer Banks received all evidence by March 14, 2007 and had all
arguments by August 9, 2007.  However, he did not issue a decision until nearly three months
later, on November 5, 2007.   Admin. Rec. at 2-15.

55.    Hearing Officer Banks admitted in his decision that he, "cannot justify the delay
in completing the Decision within a reasonable period of time."  Hearing Officer's Decision at
12.

56.    He also acknowledged, that O.O.'s education at Kingsbury is appropriate.
Hearing Officer's Decision at 12.

57.    He then stated that O.O. is not receiving a *free* and appropriate public education,
as required by law.

58.    He held that Ms. Pabo is nonetheless not entitled to reimbursement, as the law
requires.  Hearing Officer's Decision at 13.

<div style="margin-left:40%">

Respectfully submitted,

/s/ (filed electronically)
Michael J. Eig          #912733
Paula A. Rosenstock     #494580
Patricia F. Cyr         #490755

MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue, Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for O.O. and Claudia Pabo

</div>