## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|   |   |   |
|---|---|---|
| | : | |
| **O.O., by his parent and next friend** | : | |
| **CLAUDIA PABO, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. Action No. 07-1863(JDB)** |
| | : | |
| **DISTRICT OF COLUMBIA,  et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____

### DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendants, through counsel, respectfully move this Court to grant summary judgment in their favor in the above-captioned case.  As established by the administrative record, the accompanying supporting memorandum and the statement of material facts as to which there is no genuine dispute, the challenged administrative determinations under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §1400 et seq., were entirely appropriate.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 6, 2008**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| | : |
| **O.O., by his parent and next friend** | : |
| **CLAUDIA PABO, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : **Civ. Action No. 07-1863(JDB)** |
| | : |
| **DISTRICT OF COLUMBIA,  et al.,** | : |
| | : |
| **Defendants.** | : |
| | : |

_____

**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE ISSUE**

1. Plaintiff O.O. is a 14-year-old resident of the District of Columbia.  *See Complaint filed November 19, 2007, para. 7.*

2. O.O. attended Our Lady of Victory School ("OLV") for the 2005-2006 school year. *See Administrative Record filed herein January 11, 2008 ("AR"), p. 605.*

3. In April, 2006, Plaintiffs asked the District of Columbia Public Schools ("DCPS") to evaluate O.O. to determine his eligibility for special education services.  *AR, p. 606.*

4. A Neuropsychological Evaluation was conducted on May 3, 2006.  *AR, p. 849-875.*

5. A Speech and Language Evaluation was conducted on May 18, 2006.  *AR, p. 842-848.*

6. An Educational Evaluation was conducted on May 30, 2006.  *AR, p. 836-841.*

7. On June 19, 2006, two months after Plaintiffs requested DCPS to evaluate O.O. for eligibility for special education services, and while DCPS was still in the process of conducting evaluations, Plaintiffs signed a "Parent Release Form" for Kingsbury Day School ("Kingsbury"), authorizing Kingsbury access to O.O.'s educational records.  The form states that the

authorization is "for purpose of admissions." *AR, p. 922.*

8.  In continuing the evaluation process, DCPS conducted classroom observations of O.O. on July 10, 2006. *AR, p. 820-823.*

9.  On August 10, 2006, DCPS sent a letter to Plaintiffs stating that a Multi-disciplinary Team ("MDT")/Individualized Educational Program ("IEP") meeting had been held in Plaintiffs' absence.  The letter further states that DCPS had tried to conduct the MDT/IEP meeting twice before, but was unsuccessful, and that Plaintiffs had promised to attend the August 10, 2006, meeting but failed to appear.  DCPS conducted the MDT/IEP meeting in Plaintiffs' absence to comply with the 120-day timeline.  DCPS forwarded a copy of the completed IEP to Plaintiffs, and delayed placement discussions pending input from Plaintiffs. *AR, p. 48.*

10.  On August 15, 2006, Plaintiffs sent a letter to DCPS informing them that they intended to enroll O.O. at Kingsbury for the 2006-2007 school year "absent an appropriate public program." *AR, p. 791.*

11.  A second MDT/IEP meeting was held on August 30, 2006.  Plaintiffs participated in the meeting.  Plaintiffs stated they wanted O.O. to attend Kingsbury.  DCPS proposed the Prospect Learning Center ("Prospect").  Plaintiffs stated they wanted to visit Prospect before a final placement decision was made. *AR, p. 672.*

12.  The May 3, 2006 Neuropsychological Evaluation, conducted by a doctor selected by Plaintiffs, recommended that O.O. be classified as multiply disabled, and that O.O. receive speech and language therapy, a behavioral plan, and supportive educational services. *AR, pp. 868-870.*  The May 18, 2006 Speech and Language Evaluation conducted by DCPS stated that O.O.'s speech and language skills were within normal limits. *AR, p. 848.*

13.  The August 30, 2006, IEP classified O.O. as multiply disabled (*AR, p. 669*), and

4

included a behavioral plan *(AR, p. 691)* and supplemental services *(AR, p. 673)*.  The IEP

provided specialized instruction in the areas of reading, mathematics, written expression,

cognitive and social emotional functioning.  *AR, pp. 689.*

14.  Prospect has a full time special education program with a low student/teacher ratio—

seven to ten students per class, and a maximum of 12 students per class.  The teachers are

certified in special education. Each classroom has an aide.  The program provides speech

therapy, occupational therapy, psychological and social services and physical therapy. *AR, p.*

*672.*

15.  At the August 30, 2006, MDT/IEP meeting, DCPS informed Plaintiffs that a slot was

available at Prospect, but could only be held open for a few days.  *AR, p. 672.*

16.  Plaintiffs visited Prospect on September 7, 2006.  *AR, p. 528.*

17.  On September 8, 2006, DCPS sent a letter to Plaintiffs in an attempt to schedule an

MDT meeting to discuss Plaintiffs' impressions of Prospect.  *AR, pp. 767, 787.*

18.  On September 14, 2006, Plaintiffs filed an administrative due process request

because of DCPS' "failure to propose an appropriate program and placement for O.O."  As a

remedy Plaintiffs sought funding for O.O.'s 2006-2007 school year at Kingsbury.  *AR, p. 785.*

19.  On September 18 2006, Plantiffs sent a letter to DCPS formally rejecting O.O.'s

placement at Prospect, informing them that a due process complaint had been filed and declining

to attend the proposed MDT meeting.  *AR, p. 789.*

20.  On September 26, 2006 a Resolution Meeting was held, but was unsuccessful.  *AR,*

*p. 604.*

21.  The due process hearing was scheduled for November 16, 2006.  *AR, p. 931.*

22.  Prior to the hearing, Plaintiffs advised the hearing officer that Plaintiffs' expert

witness was available to testify in the afternoon only, and suggested that DCPS present its case out of turn.  Plaintiffs also stated that their expert witness was unavailable during the entire month of December.  The hearing was eventually rescheduled for January 16, 2007.  *AR, pp. 564, 325.*

      23.   The due process hearing began on January 16, 2007, but did not conclude because of the length of Plaintiffs' case.  The hearing was scheduled to resume on February 12, 2007.  *AR, p. 321.*

      24.   The hearing was unable to resume on February 12, 2007, because Plaintiffs' counsel had a case scheduled in another jurisdiction.  The hearing was rescheduled for March 14, 2007.  *AR, pp. 293, 98.*

      25.   The hearing concluded on March 14, 2007.  However, the parties requested that they file closing briefs once the transcripts became available.  The transcripts were provided on June 5, 2007.  *AR, p. 36.*

      26.   Plaintiffs submitted their closing brief on August 2, 2007.  DCPS submitted their closing brief on August 6, 2007.  *AR, pp. 29, 21.*

      27.   The Hearing Officer's Determination ("HOD") issued on November 5, 2007.  *AR, p. 14.*

                      Respectfully submitted,

                      PETER J. NICKLES
                      Interim Attorney General for the
                        District of Columbia

                      GEORGE C. VALENTINE
                      Deputy Attorney General
                      Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 6, 2008**

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          :
O.O., by his parent and next friend             :
   CLAUDIA PABO, et al.,                      :
                                                          :
     Plaintiffs,                               :
                                                          :
        v.                                :    Civ. Action No. 07-1863(JDB)
                                                          :
DISTRICT OF COLUMBIA,  et al.,              :
                                                          :
     Defendants.                               :
_____:


MEMORANDUM IN SUPPORT OF DEFENDANTS'
CROSS MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

INTRODUCTION AND BACKGROUND

Plaintiff O.O. is a 14-year-old resident of the District of Columbia.  *See Complaint filed November 19, 2007, para. 7.*   He attended Our Lady of Victory School ("OLV") for the 2005-2006 school year.  *See Administrative Record filed herein January 11, 2008 ("AR"), p. 605.*

In April, 2006, Plaintiffs asked the District of Columbia Public Schools ("DCPS") to evaluate O.O. to determine his eligibility for special education services.  *AR, p. 606.*  A Neuropsychological Evaluation was conducted on May 3, 2006 (*AR, p. 849-875),* a Speech and Language Evaluation was conducted on May 18, 2006, (*AR, p. 842-848)* and an Educational Evaluation was conducted on May 30, 2006.  *AR, p. 836-841.*

On June 19, 2006, two months after Plaintiffs requested DCPS to evaluate O.O. for eligibility for special education services, and while DCPS was still in the process of conducting evaluations, Plaintiffs signed a "Parent Release Form" for Kingsbury Day School ("Kingsbury"),

authorizing Kingsbury access to O.O.'s educational records. The form states that the authorization is "for purpose of admissions." *AR, p. 922.*

In continuing the evaluation process, DCPS conducted classroom observations of O.O. on July 10, 2006. *AR, p. 820-823.*

On August 10, 2006, DCPS sent a letter to Plaintiffs stating that a Multi-disciplinary Team ("MDT")/Individualized Educational Program ("IEP") meeting had been held in Plaintiffs' absence. The letter further states that DCPS had tried to conduct the MDT/IEP meeting twice before, but was unsuccessful, and that Plaintiffs had promised to attend the August 10, 2006, meeting but failed to show. DCPS explained that they had conducted the MDT/IEP meeting in Plaintiffs' absence to comply with the 120-day timeline. DCPS forwarded a copy of the completed IEP to Plaintiffs and delayed placement discussions pending input from Plaintiffs. *AR, p. 48.*

On August 15, 2006, Plaintiffs sent a letter to DCPS informing them that they intended to enroll O.O. at Kingsbury for the 2006-2007 school year "absent an appropriate public program." *AR, p. 791.*

The May 3, 2006 Neuropsychological Evaluation, conducted by a doctor selected by Plaintiffs, recommended that O.O. be classified as multiply disabled, and that O.O. receive speech and language therapy, a behavioral plan, and supportive educational services. *AR, pp. 868-870.* The May 18 2006 Speech and Language Evaluation conducted by DCPS stated that O.O.'s speech and language skills were within normal limits. *AR, p. 848.*

A second MDT/IEP meeting was held on August 30, 2006, in which Plaintiffs participated. The August 30, 2006, IEP classified O.O. as multiply disabled (*AR, p. 669*), and included a behavioral plan (*AR*, *p. 691*) and supplemental services (*AR, p. 673*). The IEP

provided specialized instruction in the areas of reading, mathematics, written expression, cognitive and social emotional functioning. *AR, pp. 689.*

During the meeting, Plaintiffs stated they wanted O.O. to attend Kingsbury. DCPS proposed the Prospect Learning Center ("Prospect"). *AR, p. 672.* Prospect has a full time special education program with a low student/teacher ratio—seven to ten students per class, and a maximum of 12 students per class. The teachers are certified in special education. Each classroom has an aide. The program provides speech therapy, occupational therapy, psychological and social services and physical therapy. *AR, p. 672.* At the August 30, 2006, MDT/IEP meeting, DCPS informed Plaintiffs that a slot was available at Prospect, but could only be held open for a few days. Plaintiffs informed DCPS that they wanted to visit Prospect before a final placement decision was made. *AR, p. 672*

Plaintiffs visited Prospect on September 7, 2006. *AR, p. 528.* On September 8, 2006, DCPS sent a letter to Plaintiffs in an attempt to schedule an MDT meeting to discuss Plaintiffs' impressions of Prospect. *AR, pp. 767, 787.* On September 18 2006, Plantiffs sent a letter to DCPS formally rejecting O.O.'s placement at Prospect, informing them that a due process complaint had been filed and declining to attend the proposed MDT meeting. *AR, p. 789.*

On September 14, 2006, Plaintiffs filed an administrative due process request because of DCPS' "failure to propose an appropriate program and placement for O.O." As a remedy Plaintiffs sought funding for O.O.'s 2006-2007 school year at Kingsbury. *AR, p. 785.* On September 26, 2006 a Resolution Meeting was held, but was unsuccessful. *AR, p. 604.* The due process hearing was scheduled for November 16, 2006. *AR, p. 931.*

Prior to the hearing, Plaintiffs advised the hearing officer that Plaintiffs' expert witness was available to testify in the afternoon only, and suggested that DCPS present their case out of

turn.  Plaintiffs also stated that their expert witness was unavailable during the entire month of

December.  The hearing was eventually rescheduled for January 16, 2007.  *AR, pp. 564, 325.*

The due process hearing began on January 16, 2007, but did not conclude because of the

length of Plaintiffs' case.  The hearing was scheduled to resume on February 12, 2007.  *AR, p.*

*321.*  The hearing was unable to resume on February 12, 2007, because Plaintiffs' counsel had a

case scheduled in another jurisdiction.  The hearing was rescheduled for March 14, 2007.  *AR,*

*pp. 293, 98.*

The hearing concluded on March 14, 2007.  However, the parties requested that they file

closing brief once the transcripts became available.  The transcripts were provided on June 5,

2007.  *AR, p. 36.*  Plaintiffs submitted their closing brief on August 2, 2007 and DCPS submitted

their closing brief on August 6, 2007.  *AR, pp. 29, 21.*  The Hearing Officer's Determination

("HOD") issued on November 5, 2007.

In their "Motion for Summary Judgment" ("Motion"), Plaintiffs argue that the November

5, 2007, HOD must be overturned because of DCPS' alleged procedural errors and substantive

violations.

## ARGUMENT

**I.    The Standards of Review Applicable in This Case**

### A.  The requirements for summary judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if "there is no genuine issue of material fact and the moving party is entitled

to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v.

Freeh, 27 F.3d 635, 638 (D.C.Cir. 1994).  Although a court should draw all reasonable inferences

from the records submitted by the nonmoving party, the mere existence of a factual dispute, by

itself, is insufficient to bar summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the issue must be supported by sufficiently admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  See id.; see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C.Cir. 1987).

In cases such as this, the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §1400 et seq. ("IDEIA"), dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When (as here) neither party has requested the court to hear additional evidence, the "motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

## B.  The criteria for review of administrative decisions under IDEIA

IDEIA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. §1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review." Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings simply because [the court] disagree[s] with them." Board of Educ. of Arlington Heights Sch. Dist. No. 25 v. Illinois State Board of Educ., 2001 U.S.Dist.LEXIS 6994, *12 (N.D.Ill. March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect.  Angevine v. Smith, 292 U.S.App.D.C. 346, 959 F.2d 292, 295 (1992); Kerkam v. McKenzie, 274 U.S.App.D.C. 139, 862 F.2d 884, 887 (1988); Lyons v. Smith, 829 F.Supp. 414, 417 (D.D.C. 1993).  While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education."  Lyons v. Smith, supra, 829 F.Supp. at 418. As expressed in S.H. v. State-Operated School Dist. of the City of Newark, 336 F.3d 260, 269-271 (3d Cir. 2003), a district court reviewing an HOD is "required to defer to the ALJ's factual findings unless it can point to contrary non-testimonial extrinsic evidence on the record".  This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices.  Rowley, supra, 458 U.S. at 207-08.

Accordingly, before this Court may reverse the hearing officer's decision at issue, Plaintiffs must show by a "preponderance of the evidence," giving the hearing officer's finding "due weight," that the hearing officer was wrong.

**II.  The are no Substantive Violations in this Case.**

Plaintiffs argue that Defendants denied O.O. a Free Appropriate Public Education ("FAPE") because the August 30, 2006 IEP was inadequate and the proposed educational placement was inappropriate—what Plaintiffs refer to as "substantive violations."  *See Motion, pp. 23-28.*  These arguments are without merit.

**A.  The adequacy of the August 30, 2006 IEP**

20 U.S.C. §1414(c)(1) provides that an IEP team should review existing evaluations, and consider classroom observations and input from the student's teachers, in developing the

student's IEP.   20 U.S.C. §1414(d)(1)(B) provides that the IEP must be composed of the parent,

someone from the Local Education Agency ("LEA") who is knowledgeable about the special

educational services available, and someone who can interpret the evaluation results.

In developing the IEP, the MDT team reviewed all of O.O.'s most recent evaluations:

Dr. Federici's May 3, 2006 Neuropsychological Evaluation, a May 15, 2006 Comprehensive

Receptive and Expressive Vocabulary Test, a July 5, 2006 Social Work Evaluation Report, and

an August 21, 2006 Review of Independent Evaluation.  In addition, DCPS conducted classroom

observations.  *AR, p. 660-661.*   A social worker, school psychologist, speech therapist, special

education coordinator, educational consultant, clinical psychologist, and the student's mother

and attorney participated in the MDT/IEP meeting.  *AR, p. 662.*

The MDT/IEP team found O.O. eligible for special education services and classified him

as multiply disabled.  The IEP was to provide 26 hours per week of specialized instruction, and

two hours per week of psychological services.  *AR, p. 669.*   The IEP also included a behavioral

plan (*AR, p. 691*) and supplemental services (*AR, p. 673*).  The IEP was to provide specialized

instruction in the areas of reading, mathematics, written expression cognitive and social

emotional functioning.  *AR, p. 689.*

Plaintiffs argue that the IEP places O.O. in a general education setting for 15% of the

school day.  *Motion, p. 24.*  Yet, the MDT team clearly intended that O.O. be placed out of a

general education setting.  *AR, p. 659, 670.*  Plaintiffs claim that O.O. will receive services from

general education teachers.  *Motion, p. 24.*  Yet the IEP clearly states that the providers are to be

general education ***and/or*** special education teachers.  *AR, pp. 676-683.*  Plaintiffs assert that the

IEP has no measurable goals.  *Motion, p. 24.*  However, the IEP includes goals for several

academic and psychological areas including mathematics, reading, written expression, cognitive

14

functioning, and social emotional.  *AR, 676-688.*  Finally, Plaintiffs argue that the IEP did not

designate an educational placement, emphasizing that the team *proposed* Prospect.  Here,

Plaintiffs are mincing words.  There is no mistaking that the team selected Prospect as their

educational placement.  *AR, p. 672.*  The only reason the MDT Team did not issue a placement

notice on August 30, 2006 was in deference to the parent, who wanted to visit the school before a

final decision was made.  *Id.*

The parent visited the school on September 7, 2006.  *AR, 528.*  The very next day, DCPS

contacted the parent to schedule a follow-up MDT meeting to get the parent's impressions of

Prospect, and to finalize the placement decision.  *AR, pp. 767, 787.*  DCPS did not hear from

Plaintiffs again until they received the September 18, 2006, letter, from Plaintiffs' counsel

informing them that Plaintiffs would not attend the follow-up MDT meeting and, in fact, had

filed an administrative due process complaint seeking tuition reimbursement for the 2006-2007

school year and Kingsbury.  *AR, p. 785.*

Defendants followed the statutory guidelines in developing an IEP for O.O.    Therefore,

the Hearing Officer's conclusion that the August 30, 2006 IEP meets the applicable IDEIA

criteria must be affirmed.

## B.  Prospect is an appropriate educational placement.

Plaintiffs argue that the Hearing Officer erred in finding that Prospect was an appropriate

placement because he ignored the testimony of Dr. Laura Solomon.  *Motion, pp. 24-25.*  This

argument is patently untrue.  The Hearing Officer references Dr. Solomon's testimony several

times in his November 5, 2007, Hearing Officer's Determination ("HOD").  *AR, pp. 10-11.*  In

particular, the Hearing Officer points out that Dr. Solomon never testified that Prospect would be

unable to implement the August 30, 2006 IEP.  *Id.*  Dr. Solomon also testified that all of the

teachers and many of the classroom aides at Prospect are special education certified, and that there are two adults in each classroom. *AR, p. 433.*

Dr. Solomon's major objection to O.O. attending Prospect was that he would age out of the program within a year. *AR, pp. 394, 408.* Nevertheless, since a student's IEP and educational placement are re-evaluated yearly, the student's possible placement in the next year should have no bearing on the appropriateness of his placement in the present year.

Plaintiffs also submit that the MDT Team's decision to place O.O. at Prospect was ill-advised because the school did not have a space available for him. This is also untrue. During the August 30, 2006 MDT/IEP meeting, Plaintiffs were informed that there was a slot available at Prospect, but that it could only be held open for a few days. *AR, p. 672.* Moreover, Dr. Solomon admitted during her testimony that she was informed at the meeting that Prospect was holding a spot for O.O. *AR, p. 437.* Plaintiffs did not visit Prospect until after the 2006-2007 school year had begun. By that time the open slot had already been filled by another student.

In <u>Schaffer v. Weast</u>, 546 U.S. 49 (U.S. 2005), the Supreme Court held that that under the IDEA, the burden of proof in an administrative hearing challenging an IEP was properly placed upon the student, who was the party seeking relief, rather than the school district. <u>See</u> <u>also</u> 5 D.C.M.R. 3030.3 (burden of proof is the responsibility of the party seeking relief). As the party seeking relief, Plaintiffs had the burden of proving that the IEP was inadequate and the proposed placement of Prospect was inappropriate. The HOD correctly found that Plaintiffs did not sustain this burden. Accordingly, the November 5, 2007 HOD must be upheld.

### III.  Plaintiffs are not entitled to tuition reimbursement.

20 U.S.C. §1412(a)(10)(C)(i) provides that:

> Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

20 U.S.C.A. §1412(a)(10)(C)(ii) provides that:

> If the parents of a child with a disability**,** who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school ***without the consent of or referral by the public agency***, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment. [Emphasis added.]

See also 34 C.F.R. § 300.403(c).

In this case, the MDT/IEP team met on August 30, 2006.  The team found O.O. eligible for special education services, developed an IEP for O.O., and proposed Prospect as his educational placement.  Defendants have established, *supra*, that the IEP and the placement were appropriate.

On September 18, 2006, Defendants learned that Plaintiffs had unilaterally placed O.O. at Kingsbury, and were seeking tuition reimbursement for the 2006-2007 school year.  Parents who unilaterally decide to place their disabled child in private school without consent of local school officials "do so at their own financial risk." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15, (1993) (quoting Burlington, 471 U.S. at 373-- 74 (1985)).

Since Defendants had proposed an appropriate educational placement for O.O. prior to Plaintiffs' unilaterally placing O.O. at Kingsbury, Plaintiffs are not entitled to tuition reimbursement.  Accordingly, the November 5, 2007 HOD must be upheld.

**IV.  The alleged procedural violations have not resulted in a loss of educational opportunity**

 Plaintiffs argue that Defendants committed several procedural violations:  (1) failure to have the appropriate personnel at the resolution meeting; (2) failure to produce hearing transcripts; and (3) failure to issue a timely HOD.  *Motion, p. 14-22.*

 **A.   The Resolution Meeting**

  In Plaintiffs' Motion, they cite Spencer v. District of Columbia, 416 F.Supp.2d 5, 10 (D.D.C. 2006), which holds, according to Plaintiffs, that "the resolution session is an important part of the administrative process that, 'allows the agency to apply its specialized expertise to the problem [,] gives the agency an opportunity to correct its own errors [and] ensures that there will be a complete factual record for the court to review.'"   Plaintiffs utilize this quote to support their argument that the inadequate resolution session "did not allow for any of these objectives and constitutes a clear procedural violation." *Motion, p. 19.*  Plaintiffs have taken this quote out of context, and have completely misconstrued its intent.  In this quote, U.S. District Judge Ricardo Urbina ***was not*** referring to the resolution session, but was in fact, referring to the exhaustion doctrine and Judge Urbina denied the plaintiff's motion for preliminary injunction in Spencer because the plaintiff had failed to exhaust her administrative remedies.

 Plaintiffs also claim that Defendant's failure to have to appropriate personnel at the resolution meeting "frustrated the possibility of reaching a solution prior to hearing." *Motion, p. 15.*  Nonetheless, in the subsequent pages, Plaintiffs do not assert how this violation caused O.O. a loss of educational opportunity. *Motion, pp. 16-19.*  There is a body of law which holds that a procedural violation must result in a loss of educational opportunity to be considered a denial of a FAPE.

 In Lesesne v. District of Columbia, 447 F.3d 828, 834 (D.C. Cir., 2006), the Circuit Court

18

of Appeals held:

> An IDEA claim is viable only if those procedural violations affected the student's *substantive* rights. See, *e.g.,* <u>Kruvant v. District of Columbia</u>, 99 Fed.Appx. 232, 233 (D.C.Cir. 2004) (denying relief under IDEA because "although DCPS admits that it failed to satisfy its responsibility to assess [the student] for IDEA eligibility within 120 days of her parents' request, the [parents] have not shown that any harm resulted from that error"); <u>C.M. v. Bd. of Educ.</u>, 128 Fed.Appx. 876, 881 (3d Cir.2005) (per curiam) ("[O]nly those procedural violations of the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable."); <u>M.M. ex rel. D.M. v. Sch. Dist.</u>, 303 F.3d 523, 533-34 (4th Cir.2002) ("If a disabled child received (or was offered) a FAPE in spite of a technical violation of the IDEA, the school district has fulfilled its statutory obligations."); <u>W.G. v. Bd. of Trustees</u>, 960 F.2d 1479, 1484 (9th Cir.1992) (rejecting the proposition that procedural flaws " automatically require a finding of a denial of a FAPE"); <u>Thomas v. Cincinnati Bd. of Educ.</u>, 918 F.2d 618, 625 (6th Cir.1990) (rejecting an IDEA claim for technical noncompliance with procedural requirements where the alleged violations did not result in a "substantive deprivation" of the student's rights); <u>Burke County Bd. of Educ. v. Denton</u>, 895 F.2d 973, 982 (4th Cir.1990) (refusing to award compensatory education where procedural faults committed by Board did not cause the child to lose any educational opportunity).

Thus, in order to find a denial of a FAPE, Plaintiffs must show that DCPS' failure to properly staff the resolution meeting caused O.O. to lose an educational opportunity. Not only have Plaintiffs failed to show the loss of educational opportunity, they did not even argue this point before the hearing officer, nor have they included such an argument in their Motion. For that reason alone, Plaintiffs' Motion must be denied.   See  <u>Holdzclaw v. District of Columbia</u>, Civ. No. 07-0890 (D.D.C. December 5, 2007), slip op. at 6, *citing* <u>Shabazz v. Williams</u>, 2004 WL 3571946 at 2 (D.D.C. March 1, 2004) ("an allegation not presented to the independent hearing officer at a due process hearing may not be raised for the first time in this Court")  <u>See also</u> <u>Cox v. Jenkins</u>, 878 F.2d 414, 419-20 (D.C.Cir. 1989); <u>Shaw v. District of Columbia</u>, 238 F.Supp.2d 127, 140 (D.D.C. 2002).

Defendants' alleged failure to properly staff the resolution meeting did not cause O.O. to lose an educational opportunity.  Accordingly, the November 5, 2007 HOD must be upheld.

B.  **The hearing transcripts and the HOD**

Plaintiffs argue that the inaccurate transcripts and the delay in receiving them "contributed to the violation of applicable timelines in this case, thus delaying relief." *Motion, p. 20.*  There are several reasons for the so-called delayed relief in this case, most of them caused by Plaintiffs.

Plaintiffs filed their due process hearing complaint on September 14, 2006. *AR, p. 786.* A resolution meeting was held 12 days later on September 26, 2006. *AR, p. 604.*  A hearing notice was sent to the parties on October 12, 2006, scheduling the hearing for November 16, 2006. *AR, p. 931.*  The hearing did not take place on November 16, 2006, *because Plaintiffs' expert witness* was only available to testify in the afternoon, requiring Defendants to put their case on first.  Defendants would not agree to present their case first, since the burden of proof was on Plaintiffs, so the hearing had to be rescheduled.  The hearing could not be continued to December *because Plaintiffs' expert witness* was said to be unavailable for the entire month of December. *AR, p. 564.*  A hearing notice was issued on December 4, 2006, scheduling the hearing for January 16, 2007, two months after the initially scheduled hearing date. *AR, p. 325.*

The hearing began on January 16, 2007, but was not completed *because of the length of Plaintiffs' case.*  The hearing was continued to February 12, 20007. *AR, p. 321.*  The hearing did not take place on February 12, 2007, *because Plaintiffs' counsel had a hearing in another jurisdiction.*  The hearing was continued until March 14, 2007. *AR, pp. 293, 257, 98.*  The hearing concluded on March 14, 2007.

Rather than present closing arguments at the hearing, the parties agreed to provide closing briefs once they received copies of the hearing transcripts.  The transcripts, which are 392 pages in length, were made available on June 5, 2007. *AR, p. 13.*  Nevertheless, *Plaintiffs*

did not file their closing brief until August 2, 2007, *nearly two months later*. In short, Plaintiffs are responsible for six months of the so-called "delayed relief."

Defendants cannot offer an explanation why the Hearing Officer did not issue his HOD until November 5, 2007. However, Defendants note that the Administrative Record is 928 pages, excluding the HOD, and the Hearing Officer stated that he conducted a "thorough review of the record." Defendants submit that the timeline violations, much of which were caused by Plaintiffs, are not a sufficient basis for finding a denial of a FAPE. Accordingly, the November 5, 2007 HOD must be upheld.

## CONCLUSION

Plaintiffs Motion seeks tuition reimbursement at Kingsbury for the 2006-2007 and 2007-2008 school years. Plaintiffs argue that Defendants committed procedural violations, which resulted in a denial of a FAPE. Yet Plaintiffs fail to state that these alleged procedural violations caused O.O. a loss of educational opportunity. Plaintiffs further argue that Defendants developed an inadequate IEP and selected an inappropriate educational placement—substantive violations. However, Defendants followed the statutory requirements in creating the IEP, and proved that Prospect could implement the IEP as written. Since Defendants had proposed an appropriate educational placement for O.O. prior to Plaintiffs unilaterally placing O.O. at Kingsbury, Plaintiffs are not entitled to tuition reimbursement. Accordingly, Plaintiffs' Motion must be denied, Defendants' cross motion for summary judgment must be granted, and the November 5, 2007 HOD must be upheld.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Edward P. Taptich*
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

/s/ *Veronica A. Porter*
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 6, 2008**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          :
O.O., by his parent and next friend       :
    CLAUDIA PABO, et al.,                  :
                                          :
        Plaintiffs,                        :
                                          :
        v.                                 :    Civ. Action No. 07-1863(JDB)
                                          :
DISTRICT OF COLUMBIA,  et al.,             :
                                          :
        Defendants.                        :
_____:

DEFENDANTS' RESPONSE TO PLAINTIFFS'
STATEMENT OF UNDISPUTED FACTS

(Paragraph numbers correspond to the paragraph numbers in Plaintiffs' statement of material facts.)

12.  The application to the Kingsbury Day School ("Kingsbury") included in the Administrative Record ("AR") is undated.  *AR, p. 912-921.*  However, Plaintiffs' Parent Release Form, which is "for purpose of admissions" and authorizes Kingsbury access to O.O.'s educational records, is dated June 19, 2006.  *AR, p. 922.*

15.  There is no information in the AR that indicates that Ms. Pabo advised the District of Columbia Public Schools ("DCPS") that she would be unavailable to attend the Multi-disciplinary Team ("MDT") meeting on August 10, 2006.  On the contrary, the August 10, 2006, letter from DCPS to Ms. Pabo states "as of yesterday, you confirmed that you would be present" at the MDT meeting.  *AR, p. 48.*

16.  This allegation is not true.  The MDT team did complete an Individualized Education Program ("IEP") on August 10, 2006, and mailed a copy to Ms. Pabo.  *AR, pp. 48, 51-66.*

22.  This statement is not a "fact" but is Plaintiffs' rationale for enrolling O.O. at

23

Kingsbury.

24.  The allegation that there was no space at Prospect is not true.  The August 30, 2006 MDT notes state that there is space available, but that the space could only be held for a couple of days.  *AR, p. 672.*  Even Dr. Solomon, Plaintiffs' own witness, admitted that DCPS informed her at the MDT meeting that space was available for O.O. at Prospect.  *AR, p. 437.*  The cited references do not support Plaintiffs' allegation that Dr. Peterson stated that the classes for 13-year-olds were full.

30.  This is not a fact but an opinion of Plaintiffs.  Pointedly, there is no reference to the AR for this "fact."

43.  This allegation is not true.  Ms. Brown did not testify that the IEP meeting was deficient because a general educator was not present.  *AR, p. 184.*

45.  Dr. Peterson testified by phone.  It is unclear what document she was referring to when she stated that initially, Prospect was unable to meet O.O.'s needs.  However Dr. Peterson later testified that she was viewing the August 30, 2006 IEP, that it was a full-time IEP, and that Prospect could implement the IEP.  *AR, pp. 231-232.*

46.  Dr. Peterson does not use the term "therapeutic" in describing the program at Prospect.  However, Dr. Peterson testified that Prospect could meet O.O.'s social emotional goals.  *AR, pp. 234-235.*

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the
  District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*_____
EDWARD P. TAPTICH (012914)
Section Chief
Equity Section Two

*/s/ Veronica A. Porter*_____
VERONICA A. PORTER (412273)
Assistant Attorney General
Civil Litigation Division
Equity Section Two
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
(202) 724-6651 (phone)
(202) 727-3625 (facsimile)
veronica2.porter@dc.gov

**March 6, 2008**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| **O.O., by his parent and next friend CLAUDIA PABO, et al.,** | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civ. Action No. 07-1863(JDB)** |
| | : | |
| **DISTRICT OF COLUMBIA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

_____

**ORDER**

On consideration of Defendants' cross motion for summary judgment and opposition to Plaintiffs' motion for summary judgment, the response thereto and the record in this proceeding, it is, this _____ day of _____, 2008,

**ORDERED**, That Plaintiffs' motion for summary judgment is DENIED, and the Defendants' cross motion for summary judgment is GRANTED; it is

**FURTHER ORDERED**, That the November 5, 2007, hearing officer's decision is affirmed; and it is

**FURTHER ORDERED**, That Plaintiffs' complaint herein is dismissed with prejudice.


_____
U.S. DISTRICT COURT JUDGE

26