## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.O., by his parent and next friend, CLAUDIA PABO, | |
| Plaintiffs, | |
| v. | Civil Action No. 07-1863 (JDB) |
| DISTRICT OF COLUMBIA, *et. al.*, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs hereby file this opposition and reply to defendants' cross-motion for summary judgment and opposition to plaintiffs' motion for summary judgment.

**I.    DEFENDANTS ERR IN ARGUING THAT THERE ARE NO SUBSTANTIVE VIOLATIONS IN THIS CASE.**

Defendants incorrectly claim that there have been no substantive violations in this case when, in fact, there have been numerous substantive violations, each of which has denied O.O. his right to a free appropriate public education ("FAPE"). Both the defendants and the Hearing Officer have unaccountably ignored these violations.

**A.    The August 30, 2006 IEP Was Inappropriate.**

Defendants argue that O.O.'s Individualized Education Program ("IEP") was adequate simply because DCPS had the appropriate team members present and reviewed the appropriate evaluations, as outlined in 20 U.S.C. § 1414 (c)(1) and (d)(1)(B). *Cross-Motion* at 13-14. However, a local educational agency ("LEA") is required to do much more than assure that the appropriate persons are present at the meeting to review the evaluations. In order to comply with

the Individuals with Disabilities Education Improvement Act ("IDEA"), the LEA must draft an

IEP that is *calculated to provide the child with a FAPE*.  In order to meet that statutory

requirement, among other components it must include present levels of performance,

measurable[1] goals and objectives, specified amounts of time in special education and/or general

education, related services to be provided, and an appropriate placement.  20 U.S.C. § 1414

(d)(1)(A);  20 U.S.C. § 1415 (b)(3).

The only expert witness called in this case, Dr. Laura Solomon, stated that Oleg's DCPS

IEP was inappropriate and unable to meet his needs.  Admin. Rec. at 395, 401-05, 407, 412.

DCPS failed to present a single witness to rebut plaintiffs on this point.  Thus, although plaintiffs

do not dispute that DCPS had the appropriate team members present at the IEP meetings and

reviewed the appropriate documents, we urge the Court to recognize that the resulting IEP was

never calculated to provide O.O. with a FAPE.

Moreover, the August 30, 2006 IEP clearly states that O.O. will spend 85% of his school

time out of the general education setting.  Therefore, it requires that he spend 15% of his school

time in general education.  Admin. Rec. at 674.  Despite the obvious clarity of the IEP on this

point, defendants claim that the Multi-Disciplinary Team ("MDT")"clearly intended" that O.O.

be placed out of a general education setting for his entire school day.  *Cross-Motion* at 14.  If this

is what DCPS clearly intended, it is entirely unclear why they did not actually write it on the IEP

---

[1]      The goals, as written by DCPS, are not measurable.  The sole expert in special education
who appeared in the Due Process hearing, Dr. Solomon, testified about the inability to accurately
measure O.O.'s progress.  Admin. Rec. 69-73.  Defendants fail to respond to this argument in any
meaningful way.  Instead, they recount the IEP goals for the "several academic and psychological
areas" included in the IEP.  They simply do not provide any response to the fact that the goals as
written, are not measurable.

and place O.O. out of regular education 100% of the time.  The "intent" of MDT members does not change the inadequacy of the actual IEP as written.  Admin. Rec. at 401-04.

Similarly, in response to plaintiffs' contention that O.O. should only receive instruction from special education teachers and not general educators, defendants respond that, "the IEP clearly states that the providers are to be general education *and/or* special education teachers." *Cross-Motion* at 14 (quoting Admin. Rec. at 676-683) (emphasis in original).  Defendants have missed plaintiffs' point entirely as it is precisely this IEP language that plaintiffs object to.  As Dr. Solomon stated, O.O. should be in a special education setting for 100% of his day, and thus should be taught by special educators for 100% of his day.  Admin. Rec. at 401-04.  Therefore, the fact that the IEP lists O.O.'s providers as "general education and/or special education" teachers, is inappropriate.  Admin. Rec. at 676-683,

An IEP is created for each disabled student, and serves as a road map for the student's education.  See *Schaffer v. Weast*, 546 U.S. 49, 53-54 (2005).  Therefore, it is essential that the IEP be complete and accurate.  In *Alfonso v. District of Columbia*, 422 F.Supp. 2d 1 (D.D.C. 2006), the Court stressed the importance of a complete and accurate IEP, explaining that,"a written, complete IEP is important to serve a parent's interest in receiving full appraisal of the educational plan for her child, allowing a parent both to monitor her child's progress and determine if any change to the program is necessary." *Id*. at 7.  The Court noted that, "an IEP must comply with both procedural and substantive requirements of IDEA.  A case involving an IEP is, therefore, about both form and content." *Id*.   The Court ultimately awarded the family tuition reimbursement based on the failure of the school system to provide a complete IEP by the start of the school year.  It held, "the IEP does not comply with procedural requirements of the

IDEA. . . . Although DCPS provided addenda and amendments to the IEP, these additions do not

allow the child's parent to '[know] exactly how her child will be spending time during

school . . . ." *Id*. at 8 (citing *Mewborn v. Government of District of Columbia*, 350 F.Supp. 2d

138, 144 (D.D.C. 2005).

O.O.'s case is similar to *Alfonso*.  DCPS created a document that proposed a specific

amount of service with particular service providers, and now, months later claims that it

"intended" something different.  Parents and teachers cannot ever fully understand what a student

needs if the IEP is not an accurate reflection of the student's educational plan.  If we were able to

rely on the underlying "intent" of school system staff or other extrinsic materials to fill in gaps in

an otherwise incomplete IEP, there would be no control over what exactly was in the IEP.  Since

there is no way to determine what IEP members intended, the only way in which one can

understand afterward what the IEP contains is to look at the document itself.  That is what the

statute requires and why the IEP document itself is critical. There is simply no way that the

document created by DCPS could have provided O.O. with a FAPE.[2]

**B.**    **Prospect is an Inappropriate Educational Placement.**

Defendants argue, without support or evidence, that the proposed program at Prospect

was appropriate for O.O.  They rely on the Hearing Officer's finding that Dr. Solomon never

---

[2]    The Hearing Officer found that Ms. Pabo was not entitled to relief, in part, due to her
failure to reject the proposed IEP and placement at the August 30th meeting, and request
placement and funding for Kingsbury. As we argued in our motion for summary judgment, this is
wrong and entirely inconsistent with the record. *See* Plaintiffs' Motion for Summary Judgment
at note 10.  Defendants appear to concede this point, as they fail to address or oppose it in their
cross-motion/opposition.

technically testified that Prospect would be unable to implement the IEP.[3] *Cross-Motion* at 15

(citing Admin. Rec. at 10-11).  Both defendants and the Hearing Officer blatantly ignore Dr.

Solomon's unequivocal statements that Prospect was not an appropriate placement for O.O. and

that he would not be expected to make meaningful educational progress there.  Admin. Rec. at

408-12.  In fact, there is no contrary record on this point.

Dr. Solomon listed three significant concerns about O.O.'s proposed placement at

Prospect.  First, she was concerned about the fact that O.O. would age out of the program in just

one year.  Because O.O. is a student who has already made multiple transitions, he required a

program that had continuity where he could at least have the opportunity to continue past one

year.[4]  Admin. Rec. At 408.  Second, Dr. Solomon explained her problem with the general

education curriculum used at Prospect.  She testified that O.O.'s skills are not on grade level and

therefore, he would not have been able to make progress using the grade-level curriculum used at

Prospect.  Finally, Dr. Solomon expressed concern about the size of the classes at Prospect.  The

---

[3]    Defendants incorrectly claim that the Dr. Solomon's main objection to the placement at
Prospect was that O.O. would age out of the program within one year.  While this was one of her
concerns, it was only one of Dr. Solomon's many problems with the program.

[4]    Defendants correctly note that, under the IDEA, the IEP and placement are consider on an
annual basis.  However, when planning for a student such as O.O. who has problems with
transition and requires continuity, one cannot expect his mother to simply ignore the fact that if
placed at Prospect, O.O. would have been subjected to yet another move to another school the
very next year.  In *Holmes v. District of Columbia*, 1988 WL 21696 (D.D.C. 1988), this Court
addressed the importance of continuity of services for disabled children.   At hearing, the parent
presented testimony about "the harmful effects a transfer would have on Mr. Holmes" *Id.* at 3.
Specifically, the Court found that a transfer "would have been risky and would have carried with
it great risks of disruption." *Id.*  Furthermore, the Court acknowledged the risk in transferring a
student after he had become adjusted to his new school environment. *Id*. at 1.  This is precisely
what Ms. Pabo was considering – the risk in transferring her son to yet another school
environment after only one year at Prospect.

classes she observed had 12-13 students and three adults.  O.O. requires a much smaller class

setting.  "He needs virtually one on one . . . . He needs very small group instruction and one on

one instruction."  Admin. Rec. At 409.  The testimony is clear that Prospect could not provide

O.O. with an appropriate education, and once again there is no contrary testimony, expert or

otherwise.

> **C.      There was no space for O.O. at Prospect.**

At the hearing, plaintiffs presented testimony to show that, even if Prospect were an

appropriate placement, there was no space for O.O. there.  The lack of space at Prospect was

noted in the IEP itself, *see* Admin. Rec. at 759, and Dr. Solomon, Ms. Pabo and Dr. Peterson all

agreed on this issue, *see* Admin. Rec. at 411, 528, and 236.

Defendants contend that on August 30, "there was a slot available at Prospect, but it

could only be held open for a few days."  They argue that by the time Ms. Pabo visited Prospect,

"the open slot had already been filled by another student."  *Cross-Motion* at 16.  As the

defendants themselves note, Ms. Pabo visited Prospect on September 7, 2006, only *one week*

after DCPS made their placement recommendation.  *See Cross-Motion* at 15.  The defendants

cite no authority, nor could they, for the proposition that a school district need only make a

placement available to a child for a few days, or that if the parent does not accept the placement

in a week, the school district has no further obligation to provide FAPE.  Surely, the parent has a

right to visit a program and observe it before committing to sending his/her child there.  In this

case, by the time the parent had visited the program, the spot was filled.  Therefore, even if Ms.

Pabo had decided after her visit to place O.O. at Prospect, she would have been unable to do so.[5]

## II.    THE DEFENDANTS ERR IN ARGUING THAT THE DOCUMENTED PROCEDURAL VIOLATIONS HAVE NOT CAUSED A LOSS OF EDUCATIONAL OPPORTUNITY TO O.O. AND HIS MOTHER.

### A.    The Resolution Session.

We have already addressed the serious procedural violation committed by DCPS in

failing to hold an appropriate resolution session.[6]  However, defendants now claim that the

school system's failure to hold a meaningful resolution session with the required personnel did

not cause a loss of educational opportunity for O.O., and is therefore not a denial of FAPE.

Nothing could be further from the truth.[7]

In *Massey v. District of Columbia*, 400 F. Supp.2d 66, 72-73 (D.D.C.  2005), the Court

stressed the importance of procedural compliance with the IDEA noting that, "DCPS cannot be

---

[5]    Similarly, even if the parent had agreed to attend the September 8, 2006 "placement meeting," it would have been pointless because apparently, there was no longer a spot available for O.O. at Prospect.

[6]    Defendants argue that plaintiffs should be barred from arguing this point because they failed to make the argument before the Hearing Officer.  This is just wrong.  The parent submitted a motion for summary decision which was properly before the Hearing Officer, which includes this *exact* argument.  Therefore, they should not be barred from making it before this Court.  Admin. Rec. at 596-99.

[7]    Defendants claim that we have "completely misconstrued" the quote which we rely upon in *Spencer v. District of Columbia*, 416 F.Supp.2d 5, 10 (D.D.C. 2006).  In *Spencer*, the Court stressed the importance of the IDEA's administrative process, including the resolution session. The Court ultimately found that the plaintiff had not exhausted her administrative remedies, and was therefore, not entitled to a preliminary injunction.  This case, and its holding, is very relevant to O.O.  Plaintiffs did not misconstrue the quote or Judge Urbina's holding.

allowed to disregard the procedural requirements, thereby failing to provide children with FAPEs, all the while giving no assurance that it is capable of recognizing and remedying errors made during its placement process. Condoning DCPS' conduct in this case would eviscerate the IDEA's purpose of giving parents a greater role in the educational decisions impacting their children." *Id*. at 76. Clearly, had DCPS convened an appropriate resolution session and provided Ms. Pabo with the opportunity to discuss O.O.'s placement at Prospect, or elsewhere, it might have lead to a resolution and a FAPE for O.O. However, because DCPS failed to convene an appropriate resolution session, there was no chance for the parties to resolve the complaint, and Ms. Pabo was forced to continue funding O.O. at Kingsbury. There is nothing *free* or *appropriate* about the situation.

Furthermore, the IDEA states that a student has been denied a FAPE when a procedural inadequacy "***significantly impeded the parents' opportunity to participate in the decisionmaking process*** regarding the provision of a free appropriate public education to the parents' child; or caused a deprivation of educational benefit." 20 U.S.C. 1415(f)(3)(E)(ii) (emphasis added). The IDEA recognizes that the school system's actions may not cause an immediate deprivation of educational benefit, but those actions may still deny a family a FAPE if the school system *significantly impedes the parents' opportunity to participate in the decision-making process.* DCPS' failure to hold a resolution session with anyone who was available to discuss Ms. Pabo's concerns about Prospect significantly impeded her ability to participate in the process. Under the clear language of the IDEA, DCPS denied O.O. a FAPE.

Finally, Congress added the mandatory resolution session to the IDEA in order to increase fairness and minimize litigation. The Senate Committee report indicates that: "the goal

of these new provisions is fairness: to be sure that a district is aware of a problem and has a

chance to resolve it in a less formal manner before having to spend the time and resources for a

due process hearing. *The purpose is not to make parents go to another IEP meeting to explain*

*an issue that has already reached an impasse with the district.*" S.Rep. No. 108-185, at 39

(2003) (emphasis added). The situation identified in the Senate report is exactly what occurred

in O.O.'s case – Ms. Pabo arrived at the resolution session only to learn that DCPS was

committed to its initial position and would not discuss any alternative solutions. This outcome

was clearly not what Congress intended when adding the resolution session to the IDEA. It

clearly denied O.O. a FAPE.

> **B.**     **Defendants Fail to Offer Any Explanation for the Errors in the Transcript,**
> **and Overall Delay in the Process.**

Defendants attempt to blame the serious and significant delay in the hearing process on

parents and their counsel. This is simply not the case. First, plaintiffs concede that the parties

had problems scheduling the hearing, which accounted for some part of the delay. However, this

pales in comparison to the school system's significant and inexcusable delay in producing the

hearing transcripts. The first transcript of day one of the hearing took nearly two months to

complete and was so rife with errors that the parties agreed to have it redone. Admin. Rec. 97.

In addition to being full of misspellings, the transcript excluded nearly all of Dr. Solomon's

testimony and a portion of Marlene Gustafson's testimony. *Id*. It then took an additional *three*

*months* for the school system to provide a slightly improved copy of the hearing transcript from

day one, along with the transcript of day two. There is simply no excuse for this delay.

In addition, defendants can provide no excuse for the Hearing Officer's three month delay in providing a decision. The Hearing Officer himself admitted that he "cannot justify the delay in completing the decision within a reasonable period of time . . . ."[8] Admin. Rec. At 13. Both the Hearing Officer and defendants attempt to explain the delay, in part, due to the Hearing Officer's "thorough review of the record". This is certainly not the first case with a large administrative record and no excuse for the delay. Moreover, the Hearing Officer's review of the record was less than thorough leading to findings of fact and conclusions of law that are just wrong.

This is a case in which the school system took *over one year* to complete the appeal process – a process that is supposed to take no more than seventy-five days. While scheduling problems have accounted for a small portion of the delay, it certainly does not excuse the school system or the Hearing Officer for the significant delays in producing adequate and usable transcripts and issuing a decision. These delays significantly impacted O.O.'s right to a FAPE.

### III.    THE COURT SHOULD CONSIDER ADDITIONAL EVIDENCE.

On February 13, 2008, Hearing Officer Terry Michael Banks issued his decision in *O.O. v. DCPS* (a copy of the decision is attached as Exhibit 1). In this decision, the Hearing Officer found that DCPS denied O.O. a FAPE by failing to propose a program or placement for him prior to the start of the 2007-08 school year. Accordingly, he ordered DCPS to place and fund O.O. at Kingsbury Day School, retroactive to the start of the 2007-08 school year. This decision is relevant, and should be considered by this Court because it provides this family with the same relief which they have requested since the start of this process. Moreover, this decision provides

---

[8]    In addition, it was only after plaintiffs filed this lawsuit in Federal Court, initially based on the inexcusable delay, that the Hearing Officer actually issued his decision.

additional proof of the school system's continuous pattern of delay and failure to provide O.O. with an appropriate education.

The IDEA provides that, in any action brought to appeal the results of a due process hearing, "the court… *shall hear additional evidence* at the request of a party."  20 U.S.C. § 1415 (i)(2)(C)(ii)(emphasis added).  Further, Courts can take additional evidence, especially when it pertains to after-occurring events directly relating to the student's on-going special education needs.  *See Justin G. v. Bd. of Educ.*, 148 F.Supp. 2d, 576 (D.Md. 2001).  This decision is highly relevant, and was issued by the Hearing Officer only three months after his original November 5, 2007 decision which is the subject of this appeal.  Plaintiffs ask the Court to admit the additional evidence for consideration.

## IV.   Conclusion.

Based on the foregoing, we respectfully request that summary judgment be granted in favor of O.O. and his mother, vacating the decision of the ALJ, and ordering defendants to place and fund O.O.'s placement at Kingsbury Day School, retroactive to the start of the 2005-06 school year.

Respectfully submitted,

/s/ (filed electronically)

| | |
|---|---|
| Michael J. Eig | #912733 |
| Paula A. Rosenstock | #494580 |
| Patricia F. Cyr | #490755 |

MICHAEL J. EIG AND ASSOCIATES, P.C.

5454 Wisconsin Avenue,
Suite 760
Chevy Chase, Maryland 20815

(301) 657-1740

02/13/2008  16:31    2026983825              STUDENT HEARING OFFE                 PAGE  02/08

# District of Columbia Office of the State Superintendent
## Office of Compliance and Review
### State Enforcement & Investigation Division
Terry Michael Banks, Due Process Hearing Officer
1150 - 5th Street, S.E.; Room 3
Washington, D.C. 20003
(571) 437-7381
Facsimile: (202) 689-3825

2008 FEB 13 PM 4: 06

## Confidential

| | | |
|---|---|---|
| O███ O██████ STUDENT | ) | |
| | ) | Hearing Date: February 12, 2008 |
| Date of Birth: March 10, 1993 | ) | |
| | ) | |
| Petitioner, | ) | Complaint Filed: December 4, 2007 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | |
| PUBLIC SCHOOLS | ) | |
| | ) | Held at: 825 North Capitol Street, N.E. |
| Respondent. | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |
| Student Attending: | ) | |
| Kingsbury Day School | ) | Interim Order: February 11, 2008 |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Claudia Pabo, Mother<br>3512 Rodman Street, N.W.<br>Washington, D.C. 20008 |
| **Counsel for Petitioner:** | Michael J. Eig, Esquire<br>5454 Wisconsin Avenue; Suite 760<br>Chevy Chase, Maryland 20815-6938<br>(301) 657-1740; Fax: (301) 657-3843 |
| **Counsel for DCPS:** | Daniel McCall, Esquire<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E.; 9th Floor<br>Washington, D.C. 20002 |

An index of names is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant persons.  The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | O█ O█ |
| Child's Parent(s) (specific relationship) | Claudio Pabo, Mother |
| Child/Parent's Representative | Michael J. Eig, Esquire |
| School System's Representative | Daniel McCall, Esquire |
| Educational Consultant | Dr. Laura Solomon |
| Principal or Designee | Marlene Gustafson, Director, Kingsbury Day School |
| Social Worker/Case Manager | Cindy Brown, Clinical Social Worker, DCPS |
| Psychologist | Jermaine Perkins, School Psychologist, DCPS C.A.R.E. Center |
| Speech Pathologist | Tawana Hinton |

**Jurisdiction**

This proceeding was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District" or "D.C.") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Background**

Petitioner is a fourteen year-old student attending Kingsbury Day School ("Kingsbury"). On September 14, 2006, Petitioner filed a Due Process Complaint Notice alleging that the District of Columbia Public Schools ("DCPS") had failed to provide an appropriate placement. On November 5, 2007, this Hearing Officer issued a Hearing Officer's Decision ("HOD") concluding that Petitioner "failed to meet his burden of proving that DCPS failed to provide an appropriate placement" for the 2006-2007 school year. On December 4, 2007, Petitioner filed the instant Due Process Complaint Notice ("*Complaint*") alleging that DCPS failed to provide an appropriate placement for the 2007-2008 school year. On February 6, 2008, DCPS filed *DCPS' Response to the Complaint and DCPS' Motion to Dismiss* ("*DCPS' Motion*"). DCPS argued that (1) the issues herein were resolved in the November 5, 2007 HOD, that the "hearing officer's decision is the determination of the placement, i.e. the status quo," and that "the Petitioner is prevented from re-litigating the issue of placement by Res Judicata." On February 11, 2008, Petitioner's counsel filed an *Opposition to Motion to Dismiss*. The *Opposition* argued that the instant *Complaint* raises allegations about the subsequent school year from the one at issue in the previous proceeding; thus, the claims in the instant *Complaint* are not barred by *res judicata*. On February 11, 2008, this Hearing Officer issued an Interim Order denying *DCPS' Motion*.

The due process hearing was convened on February 12, 2008. The parties' Five-Day Disclosure Notices were admitted into evidence at the inception of the hearing. DCPS moved for a dismissal of the *Complaint* on the grounds that Petitioner's mother had withheld consent to evaluate Petitioner. The Hearing Officer denied the motion because it was untimely.

**Witnesses for Petitioner**

Dr. Laura Solomon, Educational Consultant
Marlene Gustafson, Associate Head of School, Kingsbury Day School

3

**Witnesses for DCPS**

> Tawana Hinton, Speech Pathologist, DCPS C.A.R.E. Center
> Jermaine Perkins, School Psychologist, DCPS C.A.R.E. Center
> Cindy Brown, Clinical Social Worker/Case Manager, DCPS C.A.R.E. Center

**Findings of Fact**

1. Petitioner is a fourteen year-old student attending Kingsbury.[1]

2. In a letter dated April 2, 2007, Petitioner's counsel notified counsel for DCPS in the due process proceeding pending at that time, Saurabh Gupta, that Petitioner "is requesting placement at Kingsbury Day School, with summer 2007 extended school year services, for the 2007-2008 school year. Please advise your clients."[2]

3. Petitioner is likely to derive educational benefit at Kingsbury.[3]

**Conclusions of Law**

Petitioner's counsel notified DCPS on April 2, 2007 that Petitioner expected DCPS to fund his placement at Kingsbury for the 2007-2008 school year. Since Petitioner was engaged in litigation with DCPS over placement for the 2006-2007 at that time, it was appropriate for Petitioner's counsel to provide this notice to DCPS' counsel. DCPS took no action in response to Petitioner's notice. Ms. Brown testified that she was not informed of Petitioner's counsel's letter. In fact, Ms. Brown testified that the C.A.R.E. Center was unaware that Petitioner desired funding for the 2007-2008 school year until it was notified of the December 4th *Complaint*.

In its late-filed *Response* to the *Complaint* and during the hearing, DCPS argued that it was not obligated to take any action on Petitioner's behalf because Petitioner did not enroll at the C.A.R.E. Center for the 2007-2008 school year. However, this argument ignores the obvious fact that Petitioner put DCPS on notice during the 2006-2007 school year when he was properly enrolled. At no time during this proceeding has DCPS alleged that it did not receive the April 2, 2007 letter from Petitioner's counsel. Therefore, once Petitioner notified DCPS on April 2, 2007 that he was seeking funding for the upcoming school year, DCPS had an obligation to take the necessary steps to effectuate a placement determination. At a minimum, this would entail convening a Multidisciplinary Team ("MDT") meeting to (1) review Petitioner's progress during the 2006-2007 school year, (2) develop a 2007-2008 Individualized Education Program ("IEP"), and (3) determine an appropriate placement. DCPS took no action whatsoever in response to the April 2, 2007 letter. The Hearing Officer concludes that Petitioner has met his burden of proving that

---

[1] *Complaint* at 1.
[2] Petitioner's Exhibit ("P.Exh.") No. 11.
[3] Stipulation by DCPS.

DCPS failed to develop an appropriate IEP and failed to determine an appropriate placement.

DCPS stipulated that Petitioner would be likely to derive educational benefit at Kingsbury.[4] Under *Florence County School District Four v. Carter*,[5] when a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."[6] "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.' '[E]quitable considerations are relevant in fashioning relief'... and the court enjoys 'broad discretion' in so doing."[7] It is settled law that parents who doubt the appropriateness of an IEP or a placement may remove their child to a private school and, if due process proceedings result in a determination that they were correct, the parents would be entitled to reimbursement for the costs of the private education.[8]

In fashioning fair and appropriate relief for Petitioner, the Hearing Officer notes that this is not a case in which the school officials charged with the responsibility of developing an IEP and determining an appropriate placement were derelict in their duty. In the previous proceeding, the C.A.R.E. Center convened an appropriate MDT meeting and provided Petitioner's mother a full and complete opportunity to participate in the placement determination. In this proceeding, the C.A.R.E. Center was not notified by its legal representatives of Petitioner's request for placement funding until the *Complaint* was filed. The testimony presented by DCPS, offered to prove that Petitioner did not enroll for the 2007-2008 school year, revealed that once it became aware of Petitioner's placement request, the C.A.R.E. Center staff acted promptly and responsibly to convene a Resolution Session and an MDT meeting to develop a Student Evaluation Plan ("SEP"). The Resolution Session meeting was held on December 21, 2007 and the SEP was developed on January 23, 2008. DCPS is proceeding with the development of an occupational therapy evaluation, and parties are working cooperatively to facilitate an MDT meeting.

During the previous proceeding, the C.A.R.E. Center performed appropriately in its effort to determine an appropriate placement for Petitioner. In this proceeding, the failure of its legal representatives to communicate crucial information prevented the C.A.R.E. Center from taking timely steps to develop an appropriate educational program for Petitioner for the current school year. Therefore, the Hearing Officer will not preclude the C.A.R.E. from completing an IEP and proposing a placement for Petitioner for the 2007-2008 school year. However, because DCPS did not determine a placement prior to the beginning of the school year, the Hearing Officer will order that the parent be reimbursed for expenses for tuition and transportation for the current school year, and

---

[4] See *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 200-01 (1982).
[5] 510 U.S. 7 (1993).
[6] *Id.*, 510 U.S. at 11.
[7] *Id.*, 510 U.S. at 15-16.
[8] *School Committee of the Town of Burlington, Massachusetts v. Department of Education of Massachusetts*, 471 U.S. 359, 369 (1985).

will order that Petitioner be placed at Kingsbury on an interim basis until the MDT determines an appropriate placement.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five-day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel, this 13th day of February 2008, it is hereby

**ORDERED,** that DCPS shall immediately issue a Prior Notice placing Petitioner at Kingsbury on an interim basis, including transportation and all other appropriate related services.

**IT IS FURTHER ORDERED,** that upon the submission to DCPS of receipts, invoices, cancelled checks, or other documentation of payment, DCPS shall reimburse Petitioner's parents or Kingsbury for tuition and transportation expenses related to Petitioner's enrollment at Kingsbury for the 2007-2008 school year.

**IT IS FURTHER ORDERED,** that on or before March 28, 2008, DCPS shall convene an MDT meeting at Kingsbury. The deadline date for the MDT meeting may be extended by mutual consent of the parties. DCPS shall coordinate scheduling the meeting through Petitioner's counsel, Michael J. Eig, Esquire. The MDT shall review all current evaluations and assessments, develop an IEP, and discuss placement alternatives.

**IT IS FURTHER ORDERED,** that DCPS shall afford Petitioner's parent an opportunity to participate in any meeting in which Petitioner's placement is discussed or determined. The DCPS placement representative shall advise Petitioner's parent of the advantages and disadvantages for Petitioner with respect to each school that is discussed, including any schools proposed by the parent. DCPS shall provide Petitioner's parent in an explanation for the placement DCPS proposes, and the reasons for the proposal shall be provided in the Meeting Notes. DCPS shall issue a Prior Notice within seven days if Petitioner is placed in a public facility or within 30 days if Petitioner is placed in a private facility.

**IT IS FURTHER ORDERED,** that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate DCPS Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.[9]

**IT IS FURTHER ORDERED,** that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number

---

[9] If DCPS fails to contact Petitioner's counsel to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, Petitioner's counsel shall initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

02/13/2008  16:31    2026983825                STUDENT HEARING OFFE                PAGE  08/08

of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

   This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

           Terry Michael Banks
           Hearing Officer

Date:  February 13, 2008

Issued:  2/13/08

Copies to:

Michael J. Eig, Esquire
5454 Wisconsin Avenue; Suite 760
Chevy Chase, Maryland 20815-6938
(301) 657-1740; Fax: (301) 657-3843

Daniel McCall, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002