UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| O.O., by his parent and next friend CLAUDIA PABO, et al., | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : Civ. Action No. 07-1863(JDB) <br> : |
| DISTRICT OF COLUMBIA, et al., | : <br> : |
| Defendants. | : <br> : |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

In Plaintiffs' "Response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Cross Motion for Summary Judgment" ("Opposition") filed herein March 21, 2008, Plaintiffs reiterate the same arguments they made in their summary judgment motion—that Defendants' alleged substantive and procedural violations resulted in a denial of a free appropriate public education ("FAPE").

**ARGUMENT**

**I. Alleged Substantive Violations**

    **A. The August 30, 2006 IEP was appropriate.**

Plaintiffs argue that the August 30, 2006 Individualized Education Plan ("IEP") is inappropriate because it does not include O.O.'s "present level of performance, measurable goals and objectives, specified amounts of time in special education and/or general education, related services to be provided, and an appropriate placement," as required by 20 U.S.C. §1414(d)(1)(A). *Opposition, p. 2.* Yet O.O.'s IEP does in fact include those components. The

IEP/MDT notes show that the MDT Team discussed O.O.'s present performance levels—academically, socially and emotionally—to determine what special education services he required. *See Administrative Record filed herein January 11, 2008 ("AR"), pp. 670-672.* The IEP includes measurable goals and objectives in mathematics, reading, written expression, cognitive and social/emotional areas. *AR, pp. 676-688.* The IEP states the amount of time O.O. will be in special education, and clearly states that O.O. will be schooled "out of general education setting." *AR, pp .673- 674, 689.* The IEP explains that O.O. will receive books on tape, a tape recorder, magnifying equipment, and other supplemental services, *AR, p. 689, 673.* The IEP recommends Prospect Learning Center ("Prospect"), a full time special education program with a low student/teacher ratio. *AR, p. 672.*

O.O's August 30, 2006 IEP does include the components specified in 20 U.S.C. §1414(d)(1)(A). Therefore, by Plaintiffs' own standards, the IEP is appropriate.

Plaintiffs also argued that Dr. Laura Solomon testified that O.O.'s IEP was "unable to meet his needs." *Opposition, p. 2.* However, since O.O.'s IEP is appropriate by Plaintiffs' own criteria, because it meets the requirements in 20 U.S.C. §1414(d)(1)(A), and since Dr. Solomon *did not* testify that Prospect would be unable to implement the IEP, both the August 30, 2006 IEP, and the proposed placement at Prospect were appropriate, and there was no denial of a FAPE.

Plaintiffs insist that the August 30, 2006 IEP on its face requires that O.O. spend 15% of his school time in general education, and that since O.O. needs full-time special education services, the IEP is inappropriate. *On its face* the August 30, 2006 IEP places O.O. out of a general education setting. The general education setting, and the combination general education/resource classroom setting are specifically rejected. *AR, p. 673, 689, 694.* In addition,

the MDT notes state that O.O. requires a "full-time program, including non-academic classes in small groups, low teacher-student ratio with high level of structure." *AR, p. 670*. Furthermore, the plain language of the IEP states that O.O. is to receive a total of 27.5 hours of specialized instruction. Dr. Peterson testified that if a student's IEP shows that the student is to receive 27.5 hours of specialized instruction, that student is considered to be a full-time special education student. *AR, p. 233*. Dr. Peterson explained further that in the past, if a student was designated as one requiring full time special education services, his IEP would have provided 32.5 hours of services. However, since the more recent IEPs—such as O.O.'s August 30, 2006 IEP—do not include the lunch period as part of the specialized instruction, full time is now considered 27.5 hours. *AR, p. 250-251*.

Plaintiffs state that O.O.'s IEP is "incomplete." (O*pposition, p. 4),* but do not proffer an educational reason why the IEP is inadequate. Pointedly, Plaintiffs do not fault the amount of the related services to be provided, the *thirteen* measurable goals, or the 27.5 hours of special education services. Plaintiffs certainly do not argue that O.O. should receive *more than* 27.5 hours of special education services.

The August 30, 2006 IEP is appropriate. Accordingly, the November 5, 2007 Hearing Officer's Determination ("HOD") must be upheld.

### B. Prospect is an appropriate educational placement.

Plaintiffs submit that Prospect is an inappropriate placement because O.O. would age out of the program by the next school year. *Opposition, p. 5*. As stated in Defendants "Cross Motion for Summary Judgment" ("Motion"), since a student's IEP and educational placement are re-evaluated yearly, the student's possible placement in the next year should have no bearing on the appropriateness of his placement in the present year.

Plaintiffs further submit that Prospect's class size—12-13 students—are too big because O.O. "virtually needs one on one." *Opposition. P. 6.* However, Marlene Gustesen, Director of Kingsbury, testified that there were 10 students in O.O.' class, *AR, p. 477.* Clearly, O.O. is not receiving a "one on one" education from Kingsbury, which is Plaintiffs' school of choice for O.O.

All of the teachers and many of the classroom aides at Prospect are special education certified. The class sizes are small, and there are two adults in each classroom. At the time it was proposed as O.O.'s educational placement, Prospect was fully capable of implementing O.O.'s August 30, 2006 IEP.

**C. Prospect was an available placement at the time it was proposed.**

During the August 30, 2006 MDT meeting, the District of Columbia Public Schools ("DCPS") proposed Prospect as O.O.'s educational placement. The record clearly shows that there was a slot available at the time. Indeed, Plaintiffs' own witness, Dr. Solomon, admitted during her testimony that she was informed at the meeting that Prospect was holding a spot for O.O. *AR, pp. 672, 437.* Conspicuously, Plaintiffs did not visit Prospect until after the school year had begun. By that time, the slot Prospect had been holding for O.O. had been filled by another student.

Plaintiffs argue that even if Plaintiffs had decided to send O.O. to Prospect after their visit to the school, they would have been unable to do so because there was no space available. *Opposition, p. 7.* This is simply not true. Dr. Peterson testified that she had the authority to make adjustments to accommodate an additional student, and could have created another classroom if necessary. *AR, p. 244.*

4

## II. Alleged Procedural Violations

### A. The Resolution Meeting

Plaintiffs assert that DCPS's alleged "failure to hold a resolution session with anyone who was available to discuss Ms. Pabo's concerns about Prospect significantly impeded her ability to participate in the process." *Opposition. P. 8.* Even if the Court accepts Plaintiffs' position that the resolution meeting was flawed because Defendants did not have the appropriate personnel at the meeting, there is still no denial of a FAPE, because Plaintiffs have not shown a loss of educational opportunity.

Plaintiffs' grievance is that they were unable to participate in the decision-making process, and were unable to air their concerns about Prospect. This statement is patently untrue. Plaintiffs had ample opportunity to discuss their concerns about Prospect, but refused to do so. The day after Plaintiffs visited Prospect, DCPS sent a letter to Plaintiffs in an attempt to schedule a meeting to discuss Plaintiffs' impressions of Prospect. *AR, pp. 767, 787.* Plaintiffs did not respond to the letter. Indeed, the next time DCPS heard from Plaintiffs, DCPS was informed that Plaintiffs were formally rejecting Prospect as an educational placement for O.O., that they had already filed a due process complaint notice, and that they would not attend any additional meetings to discuss the matter, deeming them unnecessary. *AR, p. 789.*

Defendants' alleged failure to properly staff the resolution meeting did not cause O.O. to lose an educational opportunity. Accordingly, there was no denial of a FAPE, and the November 5, 2007 HOD must be upheld.

### B. The Hearing Transcripts

Plaintiffs addressed the hearing transcripts and the HOD in their motion for summary judgment filed herein February 8, 2008. *See ECF Document 11-2, pp. 19-22.* Defendants

included a thorough discussion of the impact of the hearing transcripts and the delayed issuance of the HOD in their cross motion for summary judgment. *Motion, pp. 20-21.* With respect to this issue, Plaintiffs' Opposition rehashes the same arguments made in their summary judgment motion. Defendants already responded to these arguments in their Motion, and will not do so again herein.

### III. The Additional Evidence Plaintiffs ask the Court to Consider is Irrelevant.

In their Opposition, Plaintiffs have attached a February 13, *2008* HOD, which found a denial of a FAPE, and ordered DCPS to fund O.O.'s tuition at Kingsbury for the *2007-2008* school year. Plaintiffs ask this Court to consider this HOD as addition evidence, because Plaintiffs believe this *2008* HOD is proof that DCPS denied O.O. a FAPE in *2006*. Plaintiffs' assertion is absurd.

The issue before this Court is whether the August 30, 2006 IEP was appropriate, and whether Prospect was an appropriate educational placement. The *2008* HOD cannot assist the Court in making this decision. Hearing Officer Terry Banks, who issued the February 13, 2008 HOD, is the same hearing officer that issued the November 5, 2007 HOD—the basis for Plaintiffs' appeal. In the 2008 HOD, Hearing Officer Banks emphatically states that the "instant complaint raises allegations about the subsequent school year from the one at issue in the previous proceeding." *See 2008 HOD, p. 3.* Hearing Officer Banks further differentiates between the two complaints in stating, "In the previous proceeding, the C.A.R.E. Center convened an appropriate MDT meeting and provided Petitioner's mother a full and complete opportunity to participate in the placement determination." *Id., p. 5.*

The 2008 HOD has no relevance to the August, 2006 IEP and proposed educational placement at Prospect. Accordingly, the Court should deny Plaintiffs' request to consider the

2008 HOD as additional evidence.

## CONCLUSION

For the foregoing reasons, and for reasons discussed in previous filings, the November 5, 2007 HOD must be upheld, and Defendants' Motion must be granted.

          Respectfully submitted,

          PETER J. NICKLES
          Interim Attorney General for the
            District of Columbia

          GEORGE C. VALENTINE
          Deputy Attorney General
          Civil Litigation Division

          */s/ Edward P. Taptich*_____
          EDWARD P. TAPTICH (012914)
          Section Chief
          Equity Section Two

          */s/ Veronica A. Porter*_____
          VERONICA A. PORTER (412273)
          Assistant Attorney General
          Civil Litigation Division
          Equity Section Two
          441 Fourth Street, N.W., Sixth Floor South
          Washington, D.C.  20001
          (202) 724-6651 (phone)
          (202) 727-3625 (facsimile)
          veronica2.porter@dc.gov

**April 4, 2008**