# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **O.O., by his parent and next friend, CLAUDIA PABO,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**DISTRICT OF COLUMBIA, et al.,**<br><br>**Defendants.** | **Civil Action No.  07-1863 (JDB)** |

## MEMORANDUM OPINION

Plaintiffs, O.O. and his mother, Claudia Pabo, bring this action against the District of Columbia, the Mayor of the District, and the Chancellor of the D.C. Public Schools ("DCPS") under the Individuals with Disabilities Education Act ("IDEA" or "the Act") as amended, 20 U.S.C. §§ 1400-1482.[1]  They challenge an administrative determination for the 2006-2007 school year denying them tuition reimbursement for O.O.'s placement at Kingsbury Day School ("Kingsbury") instead of the school proposed by DCPS, the Prospect Learning Center ("Prospect"), and allege that the Hearing Officer failed to issue a timely decision.  Currently before the Court are the parties' cross-motions for summary judgment.  Upon careful consideration of the motions, the parties' memoranda, the entire record, and the applicable law, and for the reasons set forth below, the Court will deny plaintiffs' motion for summary judgment

---

[1]  The statute was reauthorized and recodified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004).  The amendments provide that the short title of the reauthorized and amended provisions remains the Individuals with Disabilities Education Act.  See Pub. L. 108-446, § 101, 118 Stat. at 2647; 20 U.S.C. § 1400 (2006) ("This chapter may be cited as the 'Individuals with Disabilities Education Act.'").  Accordingly, the Court will cite to the amended act as the IDEA.

and will grant defendants' motion for summary judgment.

## STATUTORY BACKGROUND

Under the IDEA, all states, including the District of Columbia, that receive federal education assistance must establish policies and procedures to ensure that "[a] free appropriate public education ["FAPE"] is available to all children with disabilities residing in the State . . . ." 20 U.S.C. § 1412(a)(1)(A). The law defines FAPE as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required . . . ." Id. § 1401(9). Once a child is found to qualify for a FAPE, DCPS is required to develop and implement an Individualized Education Program ("IEP") for him or her. Id. § 1414(d)(2)(A). The IEP comprehensively describes the student's present academic level, details measurable annual goals for the student, specifies necessary educational and related services, and establishes the extent to which the student will participate in a regular education classroom. Id. § 1414(d)(1)(A)(i).

In order to implement the IEP, a team that includes the child's parents determines where the child should be placed. Id. § 1414(e). If no public school can meet the child's needs, DCPS is required to place him or her at an appropriate private school and pay the tuition. Id. § 1412(a)(10)(B)(i); see also Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985). If a parent disagrees with the IEP or the subsequent placement, he or she is entitled to an "impartial due process hearing" conducted by the state or local educational agency. 20 U.S.C. § 1415(f)(1)(A). Any party aggrieved by the hearing decision may bring a civil action challenging it. Id. § 1415(i)(2)(A).

## FACTUAL BACKGROUND[2]

O.O. was born in Russia and adopted at age five by Pabo.  Pls.' Stmt. ¶¶ 1-2.  She

enrolled him at Hearst Elementary School in DCPS.  Id. ¶ 2.  Although five-year-olds normally

start kindergarten at Hearst, O.O. began pre-kindergarten because he was not ready for

kindergarten.  Id.  He stayed at Hearst through third grade.  Id. ¶ 3.  He moved to another DCPS

school, John Eaton Elementary School, for fourth and fifth grades.  Id. ¶ 4.  For the 2005-2006

year, Pabo removed O.O. from John Eaton and enrolled him at Our Lady of Victory ("OLV"), a

private school.  Id. ¶ 5.  There, he repeated the fifth grade, making him now two years behind his

peers.  Id.

Despite repeating a grade he had just completed, O.O. struggled academically at OLV.

Id. ¶ 6.  He did not receive special education services until 2006, although he had received

English as a Second Language ("ESL") services throughout elementary school.  Id. ¶ 3.  In the

spring of 2006, Pabo contacted DCPS to determine O.O.'s eligibility for special education and

find an appropriate placement.  Id. ¶ 9.  On April 26, 2006, a DCPS multi-disciplinary team

("MDT") meeting was held.  Id. ¶ 10.  The team decided they needed to conduct evaluations and

observations of O.O. before any determinations could be made.  Id.  The evaluations revealed

that O.O. has a specific learning disability, language disorder, problems with reading social cues

and peer relationships, behaviors associated with Attention Deficit Hyperactivity Disorder

("ADHD") including some oppositionality, impulsivity, variable attention, hyperactivity, and

---

[2] Plaintiffs and defendants each provide a statement of material facts that they allege are not genuinely at issue.  The Court refers to these statements respectively as "Pls.' Stmt." and "Defs.' Stmt."  Defendants also offer a response to plaintiffs' statement of undisputed facts, which the Court refers to as "Defs.' Response."  The facts summarized in this section are not in dispute except where noted.

poor executive functioning. Id. ¶ 7. Additionally, O.O. is identified as having Fetal Alcohol

Syndrome. Id. DCPS has identified him as a child with multiple educational disabilities and it is

undisputed that he is eligible to receive special education and related services under the IDEA.

See Administrative Record ("A.R.") at 351.

Before a placement decision had been made, Pabo applied to Kingsbury, a private special

education school, in July 2006. Pls.' Stmt. ¶ 12. On August 10, 2006, another MDT meeting was

held, but Pabo was not present.[3] Id. ¶ 15. During that meeting, the team agreed that O.O. was

eligible for special education but did not propose a placement. Id. ¶ 16 Another MDT meeting

was held on August 30, 2006 with Pabo and her educational consultant, Dr. Laura Solomon,

present. Id. ¶ 17. The MDT classified O.O. as a student with multiple disabilities and

determined that he needed a full-time special education program. Id. Prospect, a DCPS full-time

special education school, was proposed as a placement option, and Pabo agreed to go observe the

program. Id. ¶¶ 18-19. Dr. Eve Peterson, the principal of Prospect, said that there was a spot

available for O.O. but that it could be held open only for a couple days. Defs.' Stmt. ¶ 15.

Before she had the opportunity to visit Prospect, Pabo enrolled O.O. at Kingsbury at her

own expense. Pls.' Stmt. ¶ 22. Pabo and Solomon went to visit Prospect on September 7, 2006,

after the 2006-2007 school year had begun. Id. ¶ 23. They both thought that Prospect was not a

suitable placement for O.O. Id. ¶ 24. The next day, DCPS invited Pabo to another MDT meeting

to discuss Prospect. Id. ¶ 27. Pabo notified DCPS that she would not be attending the meeting

---

[3] The parties disagree as to why Pabo was not present. Plaintiffs allege that she informed
DCPS she would be unavailable on that date, but DCPS ignored her request to reschedule. Pls.'
Stmt. ¶ 15. Defendants contend that Pabo had confirmed the day before that she would be
present but never showed up. Defs.' Response ¶ 15. The factual dispute is not material to the
disposition of the case, and the Court gives it no further consideration.

and had rejected the placement.  Id. ¶ 27.

On September 14, 2006, plaintiffs filed a due process hearing complaint, appealing DCPS's placement decision and requesting placement at Kingsbury.  Id. ¶ 29.  DCPS proceeded with an MDT meeting on September 21, 2006 without Pabo.  Id. ¶ 28.  On September 26, 2006, DCPS convened a resolution session with plaintiffs.  Id. ¶ 30.  No member of the MDT attended the meeting, and the only representative from DCPS present reiterated DCPS's pre-existing position that Prospect was an appropriate placement for O.O.  Id. ¶ 31; A.R. at 604.  Nothing was resolved at this resolution meeting.  A.R. at 614.

The due process hearing commenced on January 16, 2007 before Hearing Officer Terry Michael Banks but did not conclude that day.  Pls.' Stmt. ¶¶ 33, 41.  The hearing reconvened on March 14, 2007, and testimony was completed that day.  Id. ¶ 41.  At the conclusion of the hearing, defendants provided a transcript to plaintiffs.  Id. ¶ 51.  However, the transcript of the first day of the hearing contained so many errors that both parties agreed that it needed to be replaced.  Id.  In addition to numerous misspellings, the transcript omitted a large portion of testimony that had been taken.  Pls.' Reply at 9.  The revised transcripts, which still contained some errors, were not completed until June 7, 2007.  Pls.' Stmt. ¶ 51-52.  The parties then submitted their written closing arguments, which were fully briefed by August 9, 2007.  Id. ¶ 53.  After plaintiffs filed this lawsuit, the Hearing Officer issued a decision ("HOD") on November 5, 2007, finding that plaintiffs are not entitled to reimbursement.  A.R. at 14.  Having exhausted their administrative remedies, plaintiffs appeal the HOD to this Court, alleging that DCPS failed to provide a FAPE, based on both procedural and substantive violations of the IDEA.

## STANDARD OF REVIEW

Under the IDEA, "[a]ny party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2), (i)(3)(A); 34 C.F.R. § 300.516(a). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c). On review of an HOD, the burden of proof falls upon the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The preponderance-of-the-evidence standard of review, the Supreme Court has held, does not authorize unfettered de novo review. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings, id., and "[f]actual findings from the administrative proceeding are to be considered prima facie correct," S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003). Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. Dist. of Columbia, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887. At the same time, "the district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e] its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference

-6-

than is conventional' in administrative proceedings." Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887). A motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive. See Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997) ("[T]he motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.").

## DISCUSSION

When a party challenges the result of an impartial due process hearing under the IDEA, the Court reviews the administrative determination in two steps. Rowley, 458 U.S. at 206. First, the Court must determine whether the procedural requirements of the Act have been followed. Id. Second, it must determine whether the IEP developed under those procedures is "reasonably calculated to enable the child to receive educational benefits." Id. at 207. If the Court finds that both requirements are satisfied, then the government "has complied with the obligations imposed by Congress and the courts can require no more." Id.

Plaintiffs allege procedural as well as substantive violations, raising challenges to both requirements. Pls.' Mot. at 13. Plaintiffs also request that this Court consider additional evidence when making its ruling. Pls.' Reply at 10. The Court takes up the latter issue first, and then weighs plaintiffs' claims on their merits.

## I.    Consideration of Additional Evidence

Plaintiffs ask the Court to consider one piece of evidence outside of the administrative record: the Hearing Officer's subsequent decision in February 2008 that, as to the 2007-2008 school year, DCPS must reimburse Pabo for tuition and transportation expenses to Kingsbury.

See Pls.' Reply at 10 & Ex. 1 ("2008 HOD").  Plaintiffs contend the decision is relevant because

it provides them with the same relief they requested for the 2006-2007 school year at issue, and

shows a pattern of delay.  Id.  Defendants respond that the 2008 HOD is factually distinct and

thus should not be considered.  Defs.' Surreply at 6.

       The IDEA provides that "the court . . . shall hear additional evidence at the request of a

party."  20 U.S.C. § 1415(i)(2)(C)(ii).  However, a court's power to supplement the record

"entail[s] broad discretion and implicate[s] equitable considerations."  Reid, 401 F.3d at 522

(internal quotations and citations omitted).  Although the fact that the evidence relates to events

subsequent to those directly at issue does not bar the Court from reviewing it, any additional

evidence considered by the Court will only be utilized "to the extent that is necessary to resolve

the issues in this case."  See Dist. of Columbia v. Abramson, 493 F. Supp. 2d 80, 83 (D.D.C.

2007) (admitting a summary of subsequent events from a statement of material facts not in

dispute).

       After reviewing the 2008 HOD, the Court has determined that the 2008 HOD is not

relevant to the issues in the present case.  Prospect was not even a viable placement option for

O.O. for the 2007-2008 school year because he had aged out of that program by then.  A.R. at 9.

Hence, the decision that O.O. was entitled to reimbursement for placement at Kingsbury for the

2007-2008 school year on an interim basis does not shed light on whether Prospect was an

appropriate placement for the previous year. Plaintiffs have failed to explain how any

information in the 2008 HOD bolsters their challenges to the earlier HOD, and the Court sees no

relevant information.[4]  Indeed, the 2008 HOD is completely silent on the subject of Prospect.

Accordingly, the Court denies plaintiffs' request to consider the 2008 HOD as additional

evidence.

## II.    Procedural Violations

A procedural violation of the IDEA "can itself constitute the denial of a free appropriate

education."  Blackman v. Dist. of Columbia, 277 F. Supp. 2d 71, 79 (D.D.C. 2003).  But it is

important to note that, in this circuit, a procedural violation does not, standing alone, establish a

failure to provide a FAPE.  See Lesesne v. Dist. of Columbia, 447 F.3d 828, 834 (D.C. Cir.

2006).  "An IDEA claim is only viable if those procedural violations affected the student's

substantive rights."  Id. (emphasis omitted).  In the absence of a showing that the child's

education was substantively affected, no relief may be awarded.  Id.

Plaintiffs allege three procedural violations.  First, DCPS failed to convene a proper

dispute resolution session.  Pls.' Mot. at 15.  Second, DCPS failed to produce adequate transcripts

of the hearing.  Id. at 19.  Third, the Hearing Officer failed to issue a timely decision.  Id. at 20.

The Court will consider each of these issues in turn.

### A.    Dispute Resolution Session

The IDEA provides for a resolution session upon the filing of a due process complaint

and, to that end, requires that "[p]rior to the opportunity for an impartial due process hearing . . . ,

---

[4]  The 2008 decision is factually distinct in one other respect.  DCPS failed to develop an appropriate IEP and make a placement decision for the 2007-2008 school year, in contrast to the IEP and placement that was undertaken for the earlier year.  2008 HOD at 4-5.  The Hearing Officer found mitigating factors for the inaction, observing a lack of communication between plaintiffs' legal representatives and DCPS that was, apparently, due in some measure to the present litigation.  Id. at 3, 5.  In any event, the facts underlying that decision are significantly different from those at issue here.

the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint." 20 U.S.C. § 1415(f)(1)(B)(i) (emphasis added).  On September 26, 2006, the parties met for a resolution meeting, but as defendants concede, the DCPS member of the IEP team was not present.  See A.R. at 604; Def.'s Mem. at 18.  Kymberly Grafton, a DCPS Complaint Resolution Specialist, attended instead.  A.R. at 604.

The Hearing Officer recognized that DCPS failed to convene a proper resolution session, but determined that the error was harmless.  A.R. at 347.  The Court agrees.  Plaintiffs have not offered any evidence proving that O.O.'s educational opportunities were substantively affected by DCPS's failure to convene a proper dispute resolution session.  This failure, standing alone, does not amount to a denial of a FAPE where, as here, the child is at a school where he is receiving educational benefits and, hence, suffers no substantive harm from the procedural violation.  See Roark ex rel. Roark v. Dist. of Columbia, 460 F. Supp. 2d 32, 42 (D.D.C. 2006) (holding that DCPS's failure to attend the child's IEP meeting did not harm the child's substantive rights and thus did not support a finding that a FAPE had been denied).

Plaintiffs rely on Massey v. Dist. of Columbia, 400 F. Supp. 2d 66 (D.D.C. 2005), for the proposition that "violation of the procedural requirements, including the failure to hold an appropriate resolution session, can itself constitute the denial of a free appropriate education." Pls.' Mot. at 19.  True enough.  But the child in Massey attended a school that her parents believed was inappropriate; thus, each day that passed without a resolution was a day that the child suffered substantive harm.  In contrast, at the time of the dispute resolution meeting in this case, O.O. was enrolled at Kingsbury, a school that plaintiffs believe is appropriate.  Pls.' Stmt. ¶ 56.

The law merely gives the parties an "opportunity to resolve the complaint" at the resolution session and does not guarantee that the dispute will actually be resolved.  20 U.S.C. § 1415(f)(1)(B)(i)(IV).  Although the failure to have the appropriate personnel at the resolution meeting may have reduced the likelihood that the dispute could be settled without a due process hearing, there is no indication that the meeting would have been successful had DCPS complied with the regulations.  Further, the resolution meeting has no effect on the timeline for the due process hearing.  Although the resolution session shall occur within fifteen days of receiving notice of the complaint, id. § 1415(f)(1)(B)(i)(I), the due process hearing takes place thirty days after the receipt of the complaint, regardless of when the resolution session occurs, id. § 1415(f)(1)(B)(ii).  Plaintiffs suffered no additional delay in their right to a due process hearing as a result of the unproductive resolution session.  O.O.'s education was therefore not negatively impacted by this procedural violation.[5]

B.    *Hearing Transcripts*

The IDEA provides that the parents are entitled to "the right to a written . . . verbatim record" of the due process hearing.  Id. § 1415(h)(3).  Defendant's failure to produce an accurate transcript does constitute another procedural defect.  However, a transcript riddled with errors does not by itself constitute a substantive denial of a FAPE.  See Kingsmore v. Dist. of Columbia, 466 F.3d 118, 120 (D.C. Cir. 2006) (holding that an incomplete transcript of the due

---

[5] The IDEA also requires that "a representative of the agency who has decisionmaking authority on behalf of such agency" shall attend this resolution session.  20 U.S.C. § 1415(f)(1)(B)(i)(II).  Plaintiffs allege that Grafton had no such decisionmaking authority, a matter on which the record is silent.  See Pls.' Stmt. ¶ 30.  But even assuming that Grafton did not have that authority, this violation nonetheless had no substantive effect on O.O.'s educational opportunities for the reasons stated above.

process hearing, which is "missing all of the cross examination of DCPS's expert, contained over 100 instances where the hearing officer's comments were 'inaudible,' and contained an 'audio break' of unknown duration," does not constitute a substantive denial of a FAPE).  Here, however, plaintiffs also emphasize that "the delay in receiving [the transcripts] contributed to the violation of applicable timelines in this case."  Pls.' Mot. at 20.

Plaintiffs again fail to show how O.O. suffered substantive harm as a result of this procedural violation.  In fact, "[s]ince plaintiffs seek retrospective relief, in the form of tuition reimbursement, it is unclear how more timely access to the transcript would have helped." Schoenbach v. Dist. of Columbia, 309 F. Supp. 2d 71, 78-79 (D.D.C. 2004).  Without a showing of substantive harm, this procedural violation also fails to establish the denial of a FAPE.

C.    The Hearing Officer's Determination

Once DCPS receives a due process complaint, they have thirty days to resolve it before the due process hearing may occur.  See 20 U.S.C. § 1415(f)(1)(B)(ii); 30 C.F.R. § 300.510(b)(1).  A final decision must be reached in the hearing no more than forty-five days after this thirty-day period ends.  30 C.F.R. § 300.515(a)(1).  In this case, the due process complaint was filed on September 14, 2006.  Pls.' Stmt. ¶ 29.  The Hearing Officer did not issue his final decision until November 5, 2007, more than a year after the due process complaint was filed.  Id. ¶ 54.

The Court observes that much of the delay resulted from plaintiffs' own scheduling limitations, as well as the transcript errors described above.[6]  Yet even accounting for the delays

---

[6]  The hearing was initially scheduled to take place on November 16, 2006, within the required 45-day deadline.  A.R. at 931.  However, plaintiffs' expert witness was not available to

(continued...)

arguably beyond the Hearing Officer's control, he failed to issue a decision within 45 days of receiving all of the evidence, transcripts and closing arguments (the last of which was filed on August 9, 2007). Indeed, the 2006-2007 school year was over by the time the Hearing Officer actually issued his decision. He acknowledged that he "cannot justify the delay in completing the Decision within a reasonable period of time after receiving the closing arguments," but found no harm was caused to O.O. by the delay. Id. at 12. Defendants also offer no defense of the delay, noting only that the Administrative Record is almost one thousand pages long and that the Hearing Officer conducted a "thorough review" of it. Id.; Defs.' Opp'n at 21.

Assuming arguendo that some period of delay may be excluded based on extenuating circumstances, the delay here still unquestionably violated the procedures mandated by the IDEA. See Walker v. Dist. of Columbia, 157 F. Supp. 2d 11, 31-32 (D.D.C. 2001) (finding that passage of 121 days before a due process hearing decision was issued constituted a procedural violation of the IDEA). Once again, the Court must consider whether O.O. suffered educational harm as a result of this violation. As before, the Court concludes that the violation did not affect O.O.'s substantive rights. Indeed, no harm could result from the violation of the 45-day time limit because O.O. had already been withdrawn from DCPS and enrolled at Kingsbury before plaintiffs requested a hearing. See Razzaghi v. Dist. of Columbia, 2005 U.S. Dist. LEXIS 36771, at *29 (D.D.C. Sept. 28, 2005) (denying tuition reimbursement to plaintiffs who had transferred

---

[6](...continued)
testify that morning, so the hearing had to be rescheduled. Id. at 564. The hearing was rescheduled for January 16, 2007 because plaintiffs' expert witness was unavailable throughout December. Id. at 325, 567. The hearing could not be completed then because of the length of plaintiffs' case, and was scheduled to continue on February 12, 2007, id. at 318, 464, but plaintiffs' counsel had a hearing in another jurisdiction on that date. Id. at 258. The hearing was rescheduled to continue on March 14, 2007, when it concluded. Id. at 98.

their child to a private school even though DCPS was willing and able to provide a FAPE).  O.O. was not harmed by the delay because he was receiving a beneficial education throughout the process.  Hence, DCPS's procedural violations must be "disregarded as harmless."  Id. at *27 (quoting Hymes v. Dist. of Columbia, 2005 U.S. Dist. LEXIS 3032, at *10 (D.D.C. Mar. 2, 2005)).

Plaintiffs contend that DCPS cannot escape liability simply because O.O.'s parents can afford to place him at an appropriate school during the due process hearing.  Pls.' Mot. at 22 (citing Blackman, 277 F. Supp. 2d at 80).  There is some force to that observation.  In Blackman, Judge Friedman supported this proposition, writing that "[a]ny other conclusion would require parents to deny their children an education altogether in order to protect their rights under the statute. The Court will not endorse such a perverse incentive." Blackman, 277 F. Supp. 2d at 80. Here, however, such incentives are not a concern.  O.O.'s mother had enrolled him at Kingsbury well before the 45-day time limit even began running.[7]

The Court does not lightly countenance the series of procedural violations that occurred in this case, the most serious being the substantial delays in the due process hearing and the issuance of the HOD.  But the law of the circuit is clear: without a demonstration of substantive harm, procedural violations alone are insufficient to order tuition reimbursement.  Lesesne, 447

---

[7]  Furthermore, even if she had not pursued enrollment at Kingsbury, her rights would have been protected -- she could have allowed O.O. to enroll at Prospect during the pendency of her due process complaint, which would then lead to an administrative or judicial determination on whether the placement was appropriate (indeed, as discussed in Section III, Prospect is appropriate) or an order requiring appropriate relief to be granted.  See 20 U.S.C. § 1415(i)(2)(C)(iii) (requiring a court to "grant such relief as the court determines is appropriate"); see also Reid, 401 F.3d at 527 (awarding a child compensatory education that would "elevate him to the position he would have occupied absent the school district's failures").

F.3d at 834 ("[A]n IDEA claim is viable only if those procedural violations affected the student's substantive rights.") (citing Kruvant v. Dist. of Columbia, 99 Fed. Appx. 232, 233 (D.C. Cir. 2004) (denying relief under the IDEA because plaintiffs "have not shown that any harm resulted from [a procedural] error")) (other citations omitted)).  The Court recognizes that the failure to provide a timely due process decision can constitute a substantive denial of a FAPE.  See, e.g., Blackman, 277 F. Supp. 2d at 80; Walker, 157 F. Supp. 2d at 31-32.  But it will not always, and the child is not denied a FAPE where, as here, the procedural violations do not deprive him of an educational benefit under the IDEA.  See Lesesne, 447 F.3d at 834; Roark, 460 F. Supp. 2d at 42.

## III.    Substantive Violations

DCPS has the burden to ensure that O.O. was receiving a FAPE.  20 U.S.C. § 1412(a)(1)(A).  Thus, DCPS must have provided both an appropriate IEP and an appropriate placement for O.O.  Id. § 1401(9).  Here, plaintiffs challenge the appropriateness of both O.O.'s IEP and the proposed placement at Prospect.  Plaintiffs also contend that the HOD was substantively wrong.  The Court will consider each of these allegations.

### A.    The Appropriateness of O.O.'s IEP

For an IEP to be appropriate, it must be "reasonably calculated to enable the child to receive educational benefits."  Rowley, 458 U.S. at 206-07; see also Shaw, 238 F. Supp. 2d at 138.  Plaintiffs challenge the IEP as inappropriate essentially on two grounds:.  that the IEP has immeasurable goals and that the IEP does not accommodate O.O.'s need for full-time special education.

The IDEA requires "a statement of measurable annual goals" to be included in the IEP.

20 U.S.C. § 1414(d)(1)(A)(i)(II).  Plaintiffs concede that "the goals and objectives on the IEP were appropriate."  Pls.' Mot. at 24.  However, they contend that the goals "were not written in any measurable way."  Id.  This issue is best resolved, of course, by looking at the specific terms of the IEP.  O.O.'s IEP contains annual goals in various areas, as well as short-term objectives towards achieving each annual goal.  To take one example, O.O.'s annual goal for mathematics is that "[t]he student will demonstrate growth in mathematical skills, as evidenced by mastery of the following short-term objectives by 80%."  A.R. at 676.  Every one of the annual goals has the same mastery level of 80%.  A.R. at 676-88.  One representative short-term objective for this goal is that "[a]t his instructional level, the student will compare and order very large numbers in standard, expanded, and exponential forms with 80% mastery over a consistent period of time."  Id. at 676.  Although the exact language used is not always the same, each of the short-term objectives also has the same mastery level of 80%.  Id. at 676-88.  For instance, some of the objectives use the phrase "8 out of 10 situations over a consistent period of time."  See, e.g., id. at 678.  At the hearing, Solomon, plaintiffs' expert witness, indicated that the language of these goals and objectives was confusing because it is difficult to calculate the quantitative mastery levels of the short-term objectives and the long-term goals combined together.  Id. at 397.  She believes that such language makes it "incredibly hard" to determine when the goals are achieved. Id.  Defendants respond that the long-term goal simply means that 80% of the enumerated objectives should be mastered.  Id. at 166.  For example, if there are ten short-term objectives, then O.O. would need to achieve eight of them to have achieved the annual goal.

The Court finds that O.O.'s IEP contains measurable goals.  The goals and objectives are specific, and DCPS's interpretation on how to integrate them is reasonable.  Pabo is not "forced

to guess at the educational goals for her child." <u>Mewborn v. Gov't of Dist. of Columbia</u>, 360 F.

Supp. 2d 138, 144 (D.D.C. 2005).  On the contrary, the IEP is "full and complete," including a

statement of the special education and supplementary services that O.O. requires.  <u>Id.</u> at 145;

A.R. at 691, 673.  Indeed, plaintiffs raised their specific concerns and discussed them with DCPS

at the August 30 meeting.  A.R. at 671.  The notes from the MDT meeting that day indicate that

DCPS explained to Pabo and her attorney how the mastery criteria should be interpreted.  <u>Id.</u>

Plaintiffs may disagree about whether the goals are best suited to maximize O.O.'s potential, but

that is not the standard that the Court utilizes.  <u>See</u> <u>Rowley</u>, 458 U.S. at 200.

Solomon also testified at the hearing about what O.O.'s IEP says about his placement in a

general education setting.  <u>Id.</u> at 400-03.  The parties agree that O.O. should be placed out of

general education and receive full-time special education.  Pls.' Stmt. ¶ 14; Defs.' Opp'n at 14;

A.R. at 690 (stating in Section XIII of the IEP that O.O. will be "Out of General Education

Setting" and stating "reject" with respect to the options of "General Education Setting" and

"Combination General Education Resource").  Indeed, DCPS proposed placement at Prospect,

which only provides full-time special education and could not provide a general education

setting.  A.R. at 407.  But plaintiffs argue that the IEP as drafted does not adequately address this

need.  Pls.' Mot. at 24.

The IEP states that O.O. should spend 85% of his time outside of a regular education

setting.  A.R. at 674.  Solomon testified that she understood this to mean that O.O. would be

spending 15% of his time in a regular education setting.  A.R. at 401.  However, her reading

cannot reasonably be reconciled with DCPS's determination that O.O. needs full-time special

education.

The most reasonable reading of the record is that, under the IEP, O.O. would spend the remaining 15% of the time at lunch and recess, not in general education. See id. at 462. This is because the IEP provides that O.O. should receive 27.5 hours per week of special education services. Id. at 674. The principal of Prospect testified that 27.5 hours per week is considered full-time, even though the students are at the school for 32.5 hours per week. Id. at 233. He acknowledged that, in the past, a full-time special education student's IEP would say 32.5 hours per week, but Prospect no longer counts the lunch period in its assessments. Id. at 250.[8] This five hour difference is equivalent to 15% of a 32.5 hour school week. This is the only reading that allows for a coherent interpretation of the entire IEP as a single document, and plaintiffs did not provide any evidence to counter it. Looking at the entire IEP in context, then, rather than picking out isolated bits from it, the Court concludes that the IEP adequately addresses O.O.'s need for full-time special education. This interpretation is consistent with this Court's recent recognition that 27.5 hours constitutes full-time special education in other circumstances. See Brown v. Dist. of Columbia, 2008 U.S. Dist. LEXIS 58334, at *6 (D.D.C. Aug. 1, 2008) ("The team reviewed the evaluations and revised [the child]'s IEP to include full-time placement outside of general education classes, with twenty-seven hours a week of specialized instruction and one half hour a week of occupational therapy.").

Based on a review of the MDT meeting notes from August 30, 2006, moreover, the Court finds it implausible that this ambiguity was not resolved then. See A.R. at 669-72 (describing

---

[8] It appears that Kingsbury does not have the same protocols as Prospect in this regard. The director of Kingsbury testified that all of the 150 students at her school that are funded by the District have an IEP that says they spend 100% of their time outside regular education. A.R. at 480. However, Kingsbury is a private school and may have a different system. Uniformity across all schools is not required as long as the parties understand what the IEP provides.

issues raised by participants after issuance of IEP draft dated August 10, 2006, without reference

to the 85 percent provision, and stating that "MDT is in agreement w/ Out of General Education

Setting" and "DCPS proposing Prospect LC . . . a full-time special education program"). The

Court thus concludes that all parties understood the IEP in this manner after the MDT meeting.

See Jalloh v. Dist. of Columbia, 535 F. Supp. 2d 13, 23 (D.D.C. 2008) (finding DCPS's

placement appropriate because all of the necessary information was elicited at an MDT meeting,

even though the information was not included in the notice to the parents as required).

Plaintiffs also challenge the IEP's indication that many of the goals will be implemented

by a "General Education and/or Special Education Teacher." Id. at 676-83. Solomon testified

that she requested the language be changed to "special education team" at the August 30 meeting,

but DCPS rejected the change. Id. at 405; see also id. at 670. The notes from the MDT reveal

that DCPS rejected the change because they wanted the language to be "inclusive." Id. at 670.

Defendants respond that the clear intent of the IEP was to provide full-time special education to

O.O. Defs.' Opp'n at 14. Whatever the intent of the MDT may have been, the record amply

establishes that this minor linguistic change would have no substantive effect on whether the IEP

is "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S.

at 207. All other pieces of the IEP convey that O.O. will receive full-time special education, and

there is no indication that a general education teacher would have instructed O.O. The IEP

expressly states that O.O. should be placed out of a general education setting, specifically

rejecting both a general education setting and a combined general education/special education

setting. A.R. at 689. More significantly, the principal of Prospect testified that Prospect had "no

care abilities with General Education at all[;] we are full-time Special." Id. at 250. DCPS's

decision to retain the language as it was had no substantive effect on O.O.'s educational opportunities.

This issue appears to revolve solely around semantic discrepancies, not any substantive difference in the parties' positions. The IEP does not have to be drafted perfectly. See Rowley, 458 U.S. at 200 (finding that the IDEA does not require the municipality to "maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children"). It must only be reasonably calculated to provide some benefit to the child. See Rowley, 458 U.S. at 200; Reid, 401 F.3d at 525 ("[O]rdinary IEPs need only provide some benefit.") (internal quotation omitted). O.O.'s IEP meets that requirement, and plaintiffs have failed to show otherwise by a preponderance of the evidence. Thus, O.O.'s IEP is appropriate and satisfies the statutory requirements.

>    B.    The Appropriateness of O.O.'s Placement

Designing an appropriate IEP is necessary but not sufficient. DCPS must also implement the IEP, which includes offering placement in a school that can fulfill the requirements set forth in the IEP. 20 U.S.C. § 1401(9). Plaintiffs challenge DCPS's placement efforts, alleging that DCPS "fail[ed] to provide a particular school where the child can be educated." Pls.' Mot. at 23. They contend that DCPS never officially selected Prospect for placement and that Prospect was inappropriate for O.O. anyway. Defendants answer that they did select Prospect as the educational placement for O.O. and that Prospect was an appropriate selection. Defs.' Opp'n at 15.

Plaintiffs concede that DCPS proposed to place O.O. at Prospect on August 30, 2006. Pls.' Stmt. ¶ 18. Formal notice was not required, then, because the required information was set

forth at the MDT meeting.  See Jalloh, 535 F. Supp. 2d at 23 ("[The child]'s placement . . . was appropriate, however, because even though the required information was not set forth in the Prior Notice, it was elicited at the MDT/IEP meeting.").  While the Prior Notice from August 30, 2006 does not formally indicate that placement at Prospect was proposed, plaintiffs were clearly aware of DCPS's placement decision.  A.R. at 659, 672.[9]  Indeed, plaintiffs request review of the HOD in part because DCPS proposed only Prospect.  Pls.' Stmt. ¶ 20.  Plaintiffs' prompt filing of a due process complaint demonstrates that she had sufficient notice.  See T.T. v. Dist. of Columbia, 2007 U.S. Dist. LEXIS 52547, at *24-25 (D.D.C. July 23, 2007) ("[P]rompt filing of a due process complaint, along with representation by able counsel at the due-process hearing and submission of evaluations and other reports as hearing exhibits, demonstrates 'that the notice received . . . did not compromise any of the parent's rights under the IDEA.'") (quoting Shaw, 238 F. Supp. 2d at 138).  DCPS chose not to specify a placement in the formal notice in order to allow Pabo to visit Prospect, hoping she would agree that the placement would be appropriate and that further proceedings were unnecessary.  Defs.' Opp'n at 15; Pls.' Stmt. ¶ 19.

The Court also finds that, considering O.O.'s IEP, Prospect is an appropriate placement for the child.  Plaintiffs failed to prove that Prospect would have been unable to implement O.O.'s IEP; hence, the Hearing Officer was correct in finding that the placement proposed by DCPS was appropriate.  The filling of O.O.'s reserved space by another student early in the school year does not warrant a different result.  When DCPS proposed Prospect to plaintiffs on

───────────────

[9] DCPS did issue a formal Prior Notice at an MDT meeting on September 21, 2006.  A.R. at 756.  However, Pabo did not attend this meeting.  Id. at 759.  She notified DCPS that she would not be attending because she had already rejected Prospect and filed her due process complaint.  Pls.' Stmt. ¶ 27.

August 30, 2006, they informed Pabo that they could only hold a spot open for a few days.  A.R. at 672.  However, Pabo did not visit the class until a week later, once the school year had already begun.  Id. at 528.[10]  By the time she visited, the reserved spot had been filled.  Id. at 236. Although there was no longer an opening in an existing class at Prospect currently available for O.O. , the principal told plaintiffs that she had the authority to create a new class to accommodate O.O. if Pabo chose to place him at Prospect.  Id. at 237-39.  Plaintiffs question how quickly the principal could make a space available, but they offer no evidence demonstrating that it would not have been done.  A.R. at 249.  Without any evidence showing that a new class would not have been created for O.O., plaintiffs fail to meet their burden.[11]

Plaintiffs further contend that Solomon's testimony establishes that the proposed placement at Prospect was inappropriate.  First, plaintiffs note Solomon's concern that O.O. would age out of Prospect's program in just one year.  Pls.' Reply at 5.  Indeed, at present he is already too old to attend Prospect.  See A.R. at 9.  O.O. had changed schools multiple times, and Pabo was concerned that another transition would be too difficult for him.  Pls.' Mot. at 5 n.4.  In contrast, he would be able to stay at Kingsbury through high school.  A.R. at 477.  The HOD refused to consider this factor in its analysis because the IDEA requires "annual placement determinations."  A.R. at 11 (citing 34 C.F.R. § 300.116(b) and § 300.324(b)).

---

[10] It is irrelevant whether Pabo purposely waited to visit until the school year had begun or instead was simply unable to visit until then.

[11] Assuming plaintiffs could establish that Prospect would have been unable to create a space, tuition reimbursement would, even then, not necessarily be warranted.  When a parent foregoes the offer of a space that is later determined to be an appropriate placement, he or she may be denied tuition reimbursement because, based on that offer, the school system has fulfilled its obligation to offer a FAPE.  See Roark, 460 F. Supp. 2d at 42.

It is true that the child's placement should be determined annually, but the regulations do not preclude the Hearing Officer from taking long-term considerations into account when making each annual decision. In fact, the regulations require that "consideration is given to <u>any</u> potential harmful effect on the child." 34 C.F.R. § 300.116(d) (emphasis added). If the record shows that another transition would have been detrimental to O.O.'s education, then the Hearing Officer should have taken that into account in his determination whether Prospect was "appropriate" for O.O. A.R. at 11. To be clear though, this Court is only resolving the dispute pertaining to the 2006-2007 school year at present. The fact that Prospect would not have provided education to O.O. after eighth grade during the 2007-2008 school year does not presumptively make Prospect an inappropriate school for 2006-2007.

Ultimately, the record contains no showing of such a harm. Plaintiffs cite <u>Holmes v. Dist. of Columbia</u>, 1988 WL 21696 (D.D.C. Feb. 26, 1988), to show "the importance of continuity of services for disabled children." Pls.' Mot. at 5 n.5. But <u>Holmes</u> has one clear difference with this case. There, plaintiffs actually presented evidence as to the harmful effects of a transfer on the student in question. <u>See Holmes</u>, 1988 WL 21696, at *3. Here, plaintiffs made no evidentiary showing in the record beyond the mere assertion that O.O. would be harmed by a transition to a new school after one year. <u>See</u> A.R. at 408. Thus, although the Hearing Officer would not have been precluded from considering the harm caused by a transition, plaintiffs provided no evidence of such harm.

Second, plaintiffs question the appropriateness of the Prospect curriculum for O.O.'s needs. Pls.' Reply at 5. Solomon testified that O.O.'s skills are below his grade level, and expressed concern that he would have difficulty advancing using the general grade-level

curriculum. See A.R. at 408. But this testimony falls short of establishing that Prospect could

not implement the terms and conditions of the IEP. Significantly, as the HOD correctly notes,

Solomon never testified that Prospect was unable to implement O.O.'s IEP as written. Id. at 10.

Moreover, the principal of Prospect testified that Prospect could implement O.O.'s IEP at the

start of the 2006-2007 school year. A.R. at 232, 244. The record is thus reasonably construed as

establishing that Prospect was capable of implementing O.O.'s IEP. It follows, then, that, if

O.O.'s IEP is adequate -- as this Court earlier has concluded -- Prospect is an appropriate

placement. See T.T., 2007 U.S. Dist. LEXIS 52547, at *27-28. Plaintiffs did not establish

otherwise.

Finally, plaintiffs express concern about the sizes of the classes at Prospect. Pls.' Reply at

5. Solomon claims that O.O. "needs very small group instruction and one on one instruction."

A.R. at 409. The IEP itself requires that O.O. be in a setting with a "low teacher-student ratio,"

without specifying a number. A.R. at 689. The principal of Prospect testified that the classroom

capacity for O.O.'s age group is twelve students. Id. at 238. However, Solomon testified that the

principal of Prospect told her (and Solomon and Pabo personally observed) that there are actually

thirteen students in each class at that level. A.R. at 409.[12] Regardless of whether class size at

Prospect is capped at twelve or thirteen, Pabo effectively concedes that a class size of twelve

satisfies the IEP requirement of a "low teacher-student" ratio, as the class sizes at Kingsbury

(which she submits is appropriate) are also capped at twelve students. A.R. at 672. The

differences in actual or allowable class size between Prospect and Kingsbury are de minimis --

---

[12] It is possible that the class size at Prospect would decrease if a new class were created,
as some of the current students might be transferred into the new class as well.

twelve versus thirteen -- and hence thirteen students per class also may be considered in compliance with the "low teacher-student ratio" provision. The Court thus concludes that Prospect was capable of implementing this aspect of the IEP.

Plaintiffs' opposition to the placement at Prospect has more to do with criticisms of the IEP than with Prospect's ability to implement the IEP as written. Because the Court has already deemed the IEP appropriate for the reasons outlined above, plaintiffs are left, then, to argue that Prospect cannot implement the IEP. Although Solomon asserted that Prospect was not an appropriate placement for O.O., A.R. at 412, the HOD correctly discounted Solomon's conclusions on this point as unsupported by the record, A.R. at 11. As noted earlier, the principal of Prospect testified that Prospect could implement O.O.'s IEP. A.R. at 232, 244. Plaintiffs have failed to prove otherwise. DCPS did not in this instance force Pabo to fund an appropriate education elsewhere by a purported inadequate placement. Rather, DCPS offered an appropriate placement that could satisfy the IEP, but Pabo nevertheless enrolled O.O. at Kingsbury, the option she had pursued before being offered Prospect. In doing so, she took a chance that tuition reimbursement would be denied if Prospect also was an appropriate placement. See Roark, 460 F. Supp. 2d at 42; Razzaghi, 2005 U.S. Dist. LEXIS 36771, at *28.

It is irrelevant that Kingsbury may be better suited to serve O.O. than Prospect. See Jenkins v. Squillacote, 935 F.2d 303, 305 (D.C. Cir. 1991) ("[I]f there is an 'appropriate' public school program available . . . the District need not consider private placement, even though a private school might be more appropriate or better able to serve the child.") (emphasis omitted). The IDEA "does not necessarily guarantee the child [with a disability] the best available education." Holland v. Dist. of Columbia, 71 F.3d 417, 419 (D.C. Cir. 1995). Nor does it guarantee that the child will receive the education that the parent thinks is best. See Shaw, 238

F. Supp. 2d at 139. If the parent prefers a private institution to an appropriate placement

determined by MDT, then she is free to pay for it at her own expense. See Roark, 460 F. Supp.

2d at 45 ("Parents who choose unilaterally to place their disabled child in a private school

without the agreement of the school district do so at their own risk, and are entitled to

reimbursement only if a court concludes that the placement approved by the school officials

violates the IDEA and that the private school placement is proper under the IDEA.") (internal

quotation omitted). DCPS is not required to reimburse a plaintiff for private school tuition if, as

is the case here, a FAPE was made available but the plaintiff rejected it. See 34 C.F.R. §

300.148(a).

   C.    *Strategic Decisions by Counsel*

   The Hearing Officer concluded that plaintiffs' counsel made "strategic decisions" that

preclude plaintiffs from receiving tuition reimbursement. A.R. at 14. In denying plaintiffs'

request for tuition reimbursement, the Hearing Officer relied on 34 C.F.R. § 300.148(d), which

allows the Hearing Officer to reduce or deny tuition reimbursement if the parents do not provide

proper written notice to the school of their rejection of the proposed placement or if they are

otherwise found to have acted unreasonably. Plaintiffs contend that the Hearing Officer erred in

concluding that plaintiffs' counsel tried to game the system and also that it was inappropriate for

the Hearing Officer to base his decision on such grounds. Pls.' Mot. at 25. The Court has some

concerns about the Hearing Officer's reliance on § 300.148(d),[13] but finds it unnecessary to

---

   [13] Section 300.148(d) is applicable only when "the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary school, or secondary school without the consent of or referral by the public agency." 34 C.F.R. § 300.148(c) (emphasis added). Here, however, O.O. had never received special education services from DCPS. See Pls.' Stmt. ¶ 3-4.

(continued...)

resolve that issue because ultimately the HOD rested on the merits of the evidence presented, and the Hearing Officer relied on the perceived obstructive conduct of counsel only as a supplementary basis for his decision.  See A.R. at 9-11.  Moreover, as explained above, the Court's independent analysis of the record also leads to the conclusion that O.O. was not denied a FAPE.

## **CONCLUSION**

For the foregoing reasons, the Court finds that DCPS did not deny O.O. a FAPE for the 2006-2007 school year.  Accordingly, the Court will deny plaintiffs' motion for summary judgment and will grant defendants' motion for summary judgment.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
JOHN D. BATES
United States District Judge


Date:    August 27, 2008

---

[13](...continued)
Additionally, there is an unresolved issue concerning whether the regulation applies only to the conduct of the parents (see Pl.'s Mot. at 25-26), or also applies to the conduct of the parents' counsel who act as the parents' agents.  The Court finds it unnecessary to resolve this issue considering the resolution of the FAPE issue on the merits.